Harold J. **BELLMORE**, Michael J. Fox, and James M. Montesanto, Plaintiffs,

Harold J. Bellmore, Plaintiff-Appellee, Cross-Appellant,

v.

**MOBIL OIL CORPORATION**, Defendant-Appellant, Cross-Appellee.

Nos. 312, 389, Dockets 85–7489, 85–7527.

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1985.

Decided Feb. 6, 1986.

Scott P. Moser, Hartford, Conn. (James Sicilian and Paul D. Williams, Day, Berry & Howard, of counsel), for defendant-appellant, cross-appellee.

Richard W. Farrell, Stamford, Conn. (Albert J. Barr, Farrell & Barr, of counsel), for plaintiff-appellee, cross-appellant.

Before PIERCE, MINER and DAVIS,* Circuit Judges.

DAVIS, Circuit Judge:

The major matters before us on this appeal are (1) whether the provision of the Connecticut Gasoline Dealer's Act requiring payment of good will under certain circumstances to franchisees, Connecticut Gasoline Dealer's Act, Conn.Gen.Stat. § 42–133*l* (b) (Connecticut Act), is preempted by the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2801–2841 (1982) (PMPA or Act), and (2) whether cross-appellant Harold J. Bellmore waived his right to trial by jury on the first count of his amended complaint. We hold that § 42–133*l* (b) of the Connecticut Act is not preempted by the PMPA, and that cross-appellant did waive his right to a jury trial on the first count. We therefore affirm the district court's judgment.

## I.

Harold J. Bellmore (Bellmore) leased and operated a Mobil Service Station in Hamden, Connecticut, for approximately 25 years. Mobil Oil Corporation (Mobil) is a refiner of petroleum products engaged in the sale and distribution of oil, gasoline, and gasoline-related products to franchise retailers. Mobil is also a franchisor under the provisions of the Petroleum Marketing Practices Act. Bellmore's last written franchise agreement with Mobil covered the period from June 1, 1978 through May 31, 1981. In October 1980 Mobil prepared for the expiration of Bellmore's franchise agreement by evaluating the current arrangement and arriving at a new lease

---

* Honorable Oscar H. Davis of the United States Court of Appeals for the Federal Circuit, sitting by designation.

proposal. That new franchise renewal proposal contained a rent increase from $584 per month to $1086 per month for the first year of the new term. Bellmore rejected this proposal. By letter dated November 24, 1980 Mobil stated that the franchise agreement would not be renewed because Bellmore failed to agree to the proposed rent increase as well as to other changes to the franchise agreement.

Bellmore then brought this district court suit seeking declaratory and injunctive relief to prevent Mobil from effecting its intended non-renewal. At that time Bellmore wanted to enjoin non-renewal of the franchise on the ground that Mobil's lease proposal was neither made in good faith nor in the ordinary course of business (as required by the PMPA). On June 15, 1981 the United States District Court for the District of Connecticut denied Bellmore's motion for such relief.[1] This court subsequently affirmed that ruling.

On January 11, 1982 Bellmore amended his complaint by adding a second count claiming that he was entitled to monetary compensation for the fair market value of his franchise, including good will, under the Connecticut Gasoline Dealer's Act. Contemporaneously, Bellmore filed a demand for a jury trial for the first time. Mobil then filed a Motion to Strike which in part challenged Bellmore's right to a jury trial. The district court permitted the claim alleging a violation of the Connecticut Act to go to the jury but reserved decision on the PMPA claim (now the first count of Bellmore's amended complaint) for itself.

On February 1, 1985 the jury rendered a verdict for $43,000 on Bellmore's claim for good will under the Connecticut Act. Mobil's motion for judgment notwithstanding the verdict, or in the alternative for a new trial, was denied by the district court on March 7, 1985. By memorandum of decision, the district court ruled that Mobil's non-renewal of Bellmore's franchise was proper under the PMPA.

On appeal, Mobil contends that the PMPA preempts the Connecticut Act on all issues related to the termination or non-renewal of petroleum franchises. Mobil also argues that, even if the Connecticut Act is not preempted by the PMPA, it is inapplicable as a matter of law because Bellmore voluntarily relinquished his franchise. Bellmore's cross-appeal asserts that the district court erred in refusing to submit the first count of his amended complaint to the jury. We first consider Mobil's appeal and then turn to Bellmore's.

## II.

It is now hornbook law that, in general, state authority to legislate in a particular field can be preempted by federal law in two ways. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). Congress can intend to supersede state law in a given field, *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977), or state law may actually conflict with federal law. *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). The application of the preemption doctrine to a particular case is often a matter of statutory construction and may well require a judicial determination of the legislative intent behind a specific federal statute. Congressional purpose to preempt state law can be either express or implied. Absent express preemptive language, Congressional intent to occupy a given field may be found from either a " 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' because 'the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject,' or because 'the object sought to be obtained by the federal

---

**1.** 524 F.Supp. 850 (D.Conn.1981), *aff'd mem.,*  672 F.2d 899 (2d Cir.1981).

law and the character of obligations imposed by it may reveal the same purpose.'" *Id.* at 153, 102 S.Ct. at 3022 (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

Of course, state law is also preempted by Congressional legislation "to the extent that it actually conflicts with federal law." *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153, 102 S.Ct. at 3022. An actual conflict exists where "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also Jones*, 430 U.S. at 526, 97 S.Ct. at 1310; *Bethlehem Steel Co. v. New York State Labor Relations Bd.*, 330 U.S. 767, 773, 67 S.Ct. 1026, 1029, 91 L.Ed. 1234 (1947); *Fidelity Fed. Sav. & Loan Ass'n*, 458 U.S. at 153, 102 S.Ct. at 3022.

In order to evaluate the extent to which the PMPA preempts § 42–133*l* (b) of the Connecticut Act, this court must examine the statutory language and legislative history of the PMPA, "the subject matter of the regulated field and the interest in uniformity, ... the pervasiveness of the federal statutory scheme ... [and the] impediments that state regulation might pose to federal objectives." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir.1984). First, the PMPA was enacted to establish "protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." [2] S.Rep. No. 731, 95th Cong., 2d Sess.

15, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 874 [cited as Senate Report]. To that end, the PMPA sets forth various grounds and accompanying notice requirements for termination and non-renewal, and prohibits the termination of a franchise on grounds other than those expressly specified in the legislation. In enacting the PMPA, Congress recognized the inherent disparity "of bargaining power which exists between the franchisor and the franchisee," *id.* at 876, and the resulting misfortunes of the franchisee. The gist of it is that Congress was much concerned with the coercive relationship between the franchisor and the franchisee and adopted the PMPA to protect the franchisee from arbitrary and discriminatory acts of franchisors.[3]

Mobil argues that the express statutory text of the PMPA, the legislative history of the Act, and the cases construing that Act mandate broad preemption for any issue related to the termination or non-renewal of petroleum franchises. We disagree. The PMPA neither expressly nor impliedly preempts all state law relating to any aspect of the termination or non-renewal of petroleum franchises. Rather, it preempts only state statutes as to grounds for, procedures for, and notification requirements with respect to termination or non-renewal.[4]

The PMPA's preemption provision states that:

[to] the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any politi-

---

**2.** The Congress also recognized "the legitimate needs of a franchisor to be able to terminate ... or not renew a franchise relationship based upon certain actions of the franchisee, including certain failures to comply with contractual obligations or upon certain changes in circumstances." S.Rep. No. 731, 95th Cong., 2d Sess. 19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 877.

**3.** *See Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1221 (7th Cir.1982), where the court recognized the remedial nature of the PMPA, and noted that "the Act must be given a liberal construction consistent with its overriding purpose to protect franchisees."

**4.** *See Lasko v. Consumer's Petroleum of Conn., Inc.,* 547 F.Supp. 211, 216 (D.Conn.1981).

cal subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of any such notice with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of the subchapter. 15 U.S.C. § 2806 (1982). Thus, by its own language the PMPA "does not preempt all state laws regulating petroleum franchises." *Ted's Tire Service, Inc. v. Chevron USA, Inc.*, 470 F.Supp. 163, 165 (D.Conn. 1979).

On the contrary, in formulating the PMPA Congress carefully specified the limits of the power it intended to exercise. Those limits are explained in the Senate Report as a:

> single, uniform set of rules governing the *grounds* for termination and non-renewal of motor fuel marketing franchises and the *notice* which franchisors must provide franchisees prior to termination of a franchise or non-renewal of a franchise relationship.

Senate Report, *supra*, at 877 (emphasis added). "Beyond those limits, state regulation may claim full approbation." *Exxon Corp. v. Georgia Ass'n of Petroleum Retailers*, 484 F.Supp. 1008, 1017 (N.D.Ga. 1979), *aff'd*, 644 F.2d 1030 (5th Cir.), *cert. denied*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). It would be contrary to the Congressional purpose for this court to read the statute expansively, beyond the intended limits of the PMPA, and to find a conflict between state and federal law resulting in the preemption of a state statute in areas that Congress left to the control of the states. In fact, the Senate report expressly states that "[t]o the extent that the provisions of title I do not apply to an aspect of the franchise relationship, State laws dealing with such aspects of the relationship are not preempted." Senate Report, *supra*, at 900.

The "good will" provision of the Connecticut Act upon which Mobil relies (for preemption) is not a state law applying to the grounds for, procedures for, or notice requirements of the termination or non-renewal of petroleum franchises, and thus is not "the same as" the applicable provision of the PMPA. The Connecticut Act declares that:

> Upon termination [or non-renewal] of any franchise for whatever cause ... except voluntary relinquishment or abandonment of the franchise by the franchisee, the franchisor shall fairly compensate the franchisee ... [for the] good will, if any ... provided that compensation need not be made to the franchisee for good will if 1) the franchisee has been given one year's notice of nonrenewal and 2) the franchisor agrees in writing not to enforce any covenant which restrains the franchisee from competing with the franchisor, and ... a franchisor may offset against amounts owed to a franchisee under this subsection any amount owed by such franchisee to the franchisor.

Conn. Gasoline Dealer's Act, Conn.Gen. Stat. § 42–133*l* (b). We cannot accept Mobil's argument that the payment of good will is a remedy or penalty for termination and thus preempted as not the same as the applicable provisions of the PMPA. The good will portion of the Connecticut Act is no more than a recognition of the good will value that Mobil would otherwise receive because of the efforts of the deposed franchisee. This payment of good will is not a penalty, as Mobil asserts, because Mobil is liable for the payment of such good will upon termination or non-renewal "for whatever cause or reason except voluntary relinquishment or abandonment." *Id.* The payment of good will is mandated by Connecticut simply as one element of the compensation to be paid on termination, an element Connecticut expressly considers worthy of compensation if there had not been a sufficiently long period (one year) in which to recoup that good will.

■ Likewise, the good will provision of the Connecticut Act, contrary to Mobil's assertion, is not a notice provision different from and substantially more onerous than the PMPA notice provision. As the district court said, it "is simply not a notice provision"—rather, it concerns the measure of compensation. The Connecticut Act's requirement that good will be paid if the franchisor does not notify the franchisee within one year does not affect the franchisor's ability to terminate or not to renew the franchise relationship. It is clear, too, that the state could require payment of compensation for good will even though no advance notice at all were given. In addition, even without the one-year notice, the franchisor is not liable for good will if there is no good will present or voluntary relinquishment or abandonment has occurred. In short, the alleged impact on the 90-day federal notice requirement of the one-year "good will" provision is much too tenuous, speculative, and uncertain to be considered as directly frustrating the purposes of the 90-day federal notice requirement.

■ Mobil's final argument is that, even if § 42–133*l* (b) of the Connecticut Act is not preempted by the PMPA, it is inapplicable to the facts of this case because Bellmore voluntarily relinquished his franchise as a matter of law. Mobil urges that the "involuntary" concept in the Connecticut "good will" statute embodies the common-law contractual notion that the pressure on the franchisee must be wrongful or illegal.[5] However, we reject Mobil's proffered interpretation of the "voluntary relinquishment or abandonment" provision of the Connecticut statute in favor of the broader definition urged by Bellmore. There is no indication that Connecticut meant to define the phrase—voluntary relinquishment or abandonment—in the traditional legal sense of duress. Rather, we believe that the state meant to let the trier of fact determine whether the terminated franchisee succumbed to financial or comparable pressures (even if they were not wrongful or illegal), and not merely to his own independent desires.[6] In this instance, we believe that the jury could reasonably conclude that the financial pressures complained of here made the termination involuntary within the meaning of the Connecticut statute.

For these reasons, the judgment of the district court awarding good will compensation to plaintiff pursuant to § 42–133*l* (b) of the Connecticut Act is affirmed.

### III.

■ On Bellmore's cross-appeal, the only issue is the failure of the district court to accord him a jury trial on the PMPA claim presented in the first count of his complaint (*i.e.*, the original count for declaratory and injunctive relief).

The right to trial by jury is a fundamental constitutional right. *See Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81 L.Ed. 1177 (1937). This right, however, can be waived. *United States v. Moore*, 340 U.S. 616, 621, 71 S.Ct. 524, 526, 95 L.Ed. 582 (1951). The test to determine whether a party has waived his right to trial by jury is less stringent than the "intentional relinquishment or abandonment of a known right or privilege" test applicable to other constitutional rights. *See Bush v. Allstate Ins. Co.*, 425 F.2d 393, 396 (5th Cir.), *cert. denied*, 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64, *reh'g denied*, 400 U.S. 985, 91 S.Ct. 364, 27 L.Ed.2d 397 (1970); *Moore*, 340 U.S. at 621, 71 S.Ct. at 526. *See also* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2321 (1971).

The Federal Rules of Civil Procedure provide that a party may waive his right to jury trial or specify those issues which he wishes so tried while excluding others from

---

5. *See, e.g., Zebedeo v. Martin E. Segal Co.*, 582 F.Supp. 1394, 1417 (D.Conn.1984); *Second New Haven Bank v. Quinn*, 1 Conn.App. 78, ——, 467 A.2d 1252, 1254 (1983).

6. For example, the franchisee's desire to go into another business or simply to retire.

jury consideration.[7] Fed.R.Civ.P. 38(c)–(d). In his memorandum of law in support of plaintiff's objection to Mobil's motion to strike the jury demand, Bellmore expressly disclaimed any intent to seek a jury trial on the first count of his amended complaint by advising the court that:

> Bellmore never claimed, nor does he now claim, that the jury claim filed applies to the original first count. Rather, in accordance with Rule 38, Bellmore ... filed a claim for a trial by jury, which he is asking for on the appropriate counts. Under Rule 38(c) of the Federal Rules of Civil Procedure, the jury claim ... shall be for all issues so tryable [sic], i.e. issues set forth in Counts Two through Five.

Joint App. at 52–53 (emphasis added).

Bellmore contends, however, that his subsequent oral presentation before Judge Daly should have been considered a motion under Fed.R.Civ.P. 39(b).[8] This argument cannot succeed here. Even assuming that his reply could be viewed as such a motion, in non-removal cases (like this one) "something beyond the mere inadvertence of counsel is required to relieve a party from its waiver." *Alvarado v. Santana-Lopez*, 101 F.R.D. 367, 368 (S.D.N.Y.1984) (*citing Noonan v. Cunard S.S. Co.*, 375 F.2d 69 (2d Cir.1967)).[9] Bellmore failed to meet this requirement.

### IV.

Accordingly, we hold that § 42–133*l* (b) of the Connecticut Gasoline Dealer's Act is not preempted by the PMPA and that Bellmore expressly waived his right to trial by jury on the first count of the amended complaint. The judgment of the district court is

*Affirmed.*

---

**7.** Fed.R.Civ.P. 38(c)–(d) state that

(c) Same; Specification of Issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

**8.** Fed.R.Civ.P. 39(b) states that:

(b) By the Court. Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

**9.** *See also Bush*, 425 F.2d at 396, where the court stated that "[i]t is not an abuse of discretion by a District Judge to deny a Rule 39(b) motion ... when the failure to make a timely demand for a jury trial results from mere inadvertence on the part of the moving party."