**CONSUMERS PETROLEUM CO.,**
**Plaintiff-Appellant,**

v.

**TEXACO, INC., a Delaware Corporation,**
**Defendant-Appellee.**

**No. 84–1657.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1985.

Decided Oct. 28, 1986.

Robert B. Weiss, Norman C. Ankers (argued), Brian C. Figot, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for plaintiff-appellant.

J. Walker Henry (lead counsel), Clark, Klein & Beaumont, Detroit, Mich., Randall B. Robinson (lead counsel, argued), Robert E. Fuller, Texaco Inc-Legal Dept., White Plains, N.Y., for defendant-appellee.

Before JONES, Circuit Judge, and PECK and CONTIE,* Senior Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Consumers Petroleum Company appeals from a summary judgment dismissing this action alleging a violation of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.* (1982), and pendent state law claims. The district court held that the PMPA claim was barred by the Act's one-year statute of limitations and that the pendent state law claims were pre-empted by the Act. It also denied Consumers' motion for leave to amend its complaint. We affirm the judgment as to the first two holdings and reverse and remand as to the latter.

Consumers is a commerical Michigan-based corporation which markets and distributes petroleum products in the greater Detroit, Michigan metropolitan area. The first contractual agreement between Consumers and defendant Texaco, Inc., dated back to 1954, when Consumers became a franchised distributor of Texaco branded petroleum products. The parties entered into a number of separate distributorship contracts over the course of twenty-eight years. They entered into one such contract that became effective May 1, 1976 and expired by its expressed terms on April 30, 1981.

The facts in the following paragraph are as alleged by Consumers. Sometime in early 1977, and during the course of the five-year agreement, which became effective May 1, 1976, a rumor was circulating that Texaco planned to withdraw from marketing its petroleum products in Michigan. In July 1977, Consumers was contacted by another supplier of petroleum products interested in entering into a distributorship agreement with Consumers. Later that month, Consumers' President, William Feldman, met with W.M. Fisher, Vice-President of Marketing for Texaco, in New York, to inquire about Texaco's plans to withdraw from marketing its gasoline in the Michigan region. Feldman advised Fisher of Consumers' opportunity to obtain a distributorship contract with a competing supplier. Fisher responded that "Michigan was an integral part of Texaco's marketing area and that Texaco would never withdraw from the Michigan market." As a result of that representation, Consumers refrained from accepting the other offer, or from pursuing other distributorship opportunities. Consumers learned later that Fisher had instructed his staff some months prior to the meeting in New York to undertake an extensive analysis of the Detroit market. Fisher was presented with the finding of the report, entitled "Detroit Resale Market Analysis," in January 1977. The report concluded that withdrawal from the Detroit marketing area was a "viable option."

Texaco announced publicly in March 1979 its plan to withdraw from marketing its petroleum products in Michigan. A few days prior to the public announcement, Texaco advised Consumers of the impending withdrawal. On October 14, 1980, Texaco informed Consumers by written notice that it would not renew the five-year distributorship contract scheduled to expire on April 30, 1981. Prior to the expiration of the five-year agreement, the parties entered into a one-year "interim franchise" agreement effective on May 1, 1981, the day following expiration of the prior agree-

* The Honorable Leroy J. Contie became Senior Circuit Judge July 1, 1986.

ment, and expiring on April 30, 1982. On July 17, 1981, Texaco notified Consumers by written notice that the interim franchise would not be renewed on its expiration date.

Consumers filed its complaint in this case on April 20, 1983. In its complaint, Consumers alleged that Texaco knew at the time the two parties' principals met in New York that Texaco had intentions to withdraw from marketing Texaco's gasoline in Michigan. It further alleged that it relied on the misrepresentations and as a result lost the opportunity to enter alternative distributorship agreements with other suppliers. The claims were based on violations of the PMPA and Michigan state law. Texaco moved for summary judgment on the basis that the PMPA claim was barred by the Act's one-year statute of limitations in 15 U.S.C. § 2805(a) (1982), and that the pendent state law claims were pre-empted. The district court held that the five-year agreement and the interim franchise were separate franchise relationships under the Act, which provides that the action accrues on the date of "nonrenewal or termination of the franchise or the franchise relationship." Since Consumers' complaint was not filed until almost two years after the nonrenewal of the five-year agreement, the district court concluded that the PMPA claim was time barred. The district court also held that the state law claims were preempted.

The district court's order granting Texaco's summary judgment motion was entered on June 29, 1984. On July 9, 1984, Consumers filed a motion for reconsideration or in the alternative for leave to amend. Consumers sought leave to amend the complaint to raise a claim that the one-year interim franchise was nonrenewed in violation of the PMPA. After an oral argument on August 29, 1984, the district court denied the motion.

## I.

The provision of the PMPA embodying the statute of limitations applicable to an action brought under the Act provides in relevant part:

> If a franchisor fails to comply with the requirements of section 2802 or 2803 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action may be maintained unless *commenced within 1 year after the later of—*
>
> (1) *the date of termination of the franchise or non-renewal of the franchise relationship....*

15 U.S.C. § 2805(a) (emphasis added).

Whether the statute of limitations began to run on the expiration date of the five-year agreement turns on the meaning of the terms "franchise" and "franchise relationship." Consumers contends that the five-year franchise contract and the one-year "interim franchise" form one ongoing relationship thus constituting a franchise relationship within the meaning of the PMPA. Under this theory, the limitation period would not commence until April 30, 1982, when the "interim franchise" expired. If this theory were adopted, Consumers' PMPA claim would not be time barred.

We have found no cases directly deciding this issue, nor have the parties cited to any. Consumers rests its argument primarily on the legislative history and the remedial purposes underlying the PMPA to support its interpretation. The legislative history recited by Consumers does indicate that a franchise relationship as utilized in the PMPA is broadly defined and that the renewal provisions of the PMPA address the renewal of the relationship. *See* S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S. Code Cong. & Ad. News 873, 888. Consumers also posits that the remedial purposes underlying the PMPA to protect franchisees from the abuses perpetrated by franchisors in the area of termi-

nations and nonrenewals would be thwarted if Texaco were permitted to escape liability by separating the agreements so as not to form one relationship. We need not, however, resort to the legislative history or consider the remedial purposes of the Act, for the Act itself dictates that an interim franchise has a wholly separate franchise relationship from the prior franchise.

■ The term "franchise" is defined in 15 U.S.C. § 2801 as *"any contract ... between a distributor and a retailer."* Interim franchise is defined as *"any franchise ... the term of which, when combined with the terms of all prior interim franchises ... does not exceed 3 years; ... the effective date of which occurs immediately after the expiration date of the prior franchise ... which is in writing and states clearly and conspicuously—that the franchise is an interim franchise ..."* 15 U.S.C. § 2803(b)(3). An interim franchise is, therefore, a franchise entered under a separate contract and independent of the prior franchise.

Franchise relationship is defined in 15 U.S.C. § 2801(2). That provision states:
The term *"franchise relationship"* means the respective motor fuel marketing or *distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise.* [Emphasis added.]
A franchise relationship is nothing more than the distribution obligations and responsibilities resulting from a particular franchise. As an interim franchise is a separate franchise from the previously expired franchise, the terms of the agreement, by definition, relate to different distribution obligations and responsibilities between the franchisor and franchisee and thus form a separate franchise relationship.

This conclusion finds support elsewhere in the PMPA. Section 2803(a) provides that no provision in section 2802 regarding franchise relationships shall apply to "the non-renewal of any franchise relationship—under an interim franchise." Accordingly, section 2803(c) reads "any franchisor may fail to renew any franchise relationship—*under* any interim franchise" subject to certain conditions. The sections do not read "any franchise relationship of which an interim franchise is a part." The word "under," therefore, expresses a congressional intent that an interim franchise has its own special franchise relationship, independent of the prior franchise.

Contrary to Consumers' position, the legislative history of the Act does not contradict the expressed provisions in the Act. Congress has stated as follows with respect to the term franchise relationship:

In connection with the non-renewal provisions of the title, the term "franchise relationship" is utilized. *The term is defined to cover the broad relationship which exists between a franchisor and a franchisee by reason of the franchise agreement. The term is utilized for two reasons. First, in the renewal context, the contract which constitutes the franchise may no longer exist and the term "franchise relationship" is utilized to avoid any contention that because the "franchise" does not exist there is nothing to renew.* The renewal provisions of the title address the renewal of the relationship between the parties rather than the specific rights or obligations of the parties under the franchise agreement. *Second, because the title contemplates changes in the specific provisions of the franchise agreement at the time of renewal, the title requires renewal of the relationship between the parties as distinguished from a continuation or extension of the specific provisions of the franchise agreement.* Use of the narrower term "franchise" in this context could raise unintended questions regarding the ability of the franchisor to comply with the renewal obligations of the title by offering a franchise agreement which differs in any particular from the expiring franchise.
S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S. Code Cong. & Ad. News 873, 888 (emphasis added).

The broad relationship Congress is speaking of includes those transactions between the parties after the original franchise has expired only to the extent the franchisor can not rely on loopholes in the Act to avoid the requirements of the nonrenewal provisions. Two situations seem to be covered by the term franchise relationship: 1) where the franchise agreement has expired and the parties continue to operate in a *de facto* franchisor-franchise relationship; and 2) where the original franchise ends and the franchisor offers a franchise agreement with terms different from the expiring franchise. Both these situations contemplate that the term franchise could be construed in a way that a franchisor could evade statutorily mandated requirements. An interim franchise, on the other hand, fits into neither of these categories; rather it was created by Congress with an independent life subject to a separate set of rules with respect to terminations and non-renewals.

The only case cited by Consumers that offers an interpretation of franchise relationship in the PMPA is *Wisser Co. v. Texaco, Inc.*, 529 F.Supp. 727 (S.D.N.Y. 1981). In that case, the distributor entered into a series of separate agreements with Texaco over the course of twelve years. Each agreement was renewed to become effective immediately upon expiration of the prior agreement. The district court held that the frequent and temporary renewals constituted one longstanding franchise relationship subject to the nonrenewal provisions of the PMPA. *Wisser*, however, involved a different situation from this case. The parties never entered into a statutory interim franchise. In fact, the district court in *Wisser* noted that the PMPA created interim franchises as an exception to the non-renewal provisions of the PMPA, implying that the franchise relationship at issue in the case and an interim franchise are separate and distinct. *See id.* at 732.

■ Consumers raises a policy concern with our definition of franchise relationship. Such a definition, it argues, may force a distributor to sue a supplier while their business relationship has not terminated and there is still a reasonable prospect that it may continue in the future. That concern is not, however, a legitimate one. An interim franchise is not created until after the franchisor has already made a determination to withdraw from marketing its product in the region. 15 U.S.C. §§ 2803(b)(3)(C) & 2802(b)(2)(E). At that time, the distributor should have no reasonable expectation that the relationship will continue after the prior franchise has not been renewed and the interim franchise expires. Congress obviously intended that the interim franchise would serve only as a vehicle to facilitate the orderly withdrawal from the market, which incidentally benefits the franchisee by giving it time to locate an alternative supplier. Congress did not intend for the benefits accruing to the franchisee to be transposed into burdens to the franchisor by giving the franchisee enforceable rights arising from the prior franchise. The statute thus defines an interim franchise as having a relationship apart from the prior franchise and we decline to extend the meaning.

■ In this case, the nonrenewal of the franchise relationship under the five-year agreement occurred on April 30, 1981. Consumers did not file its suit challenging that nonrenewal until almost two years later on April 20, 1983. Given that this time exceeded the one-year period allowable under the PMPA for bringing a claim, the district court correctly held that the claim was time barred.

## II.

Consumers contends next that the district court abused its discretion in denying Consumers' request for a leave to amend its complaint to assert a violation of the one-year agreement.[1] The motion for leave

---

**1.** Consumers attempted to argue before the district court that its complaint also asserted a violation of the one-year agreement. But the

only reference in the complaint to any agreement is the agreement entered into on May 1976, which was the effective date of the five-

to amend was not filed until after the district court had ruled on Texaco's summary judgment motion. The district court denied the motion after concluding that there was no viable claim under the PMPA that Consumers could pursue with respect to the nonrenewal of the one-year interim franchise.

Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend "shall be freely given when justice so requires." The district court also abuses its discretion in not granting leave to amend unless there is some apparent or declared reason not to allow the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). Such reasons may include undue delay, bad faith or dilatory motives by the movant, undue prejudice to the opposing party by allowing the amendment, or futility of amendment. 371 U.S. at 182, 83 S.Ct. at 230. In this case, the district court addressed the merits of the claims, so the basis for the denial of Consumers' motion shall be construed as "futility of amendment."

Consumers advanced two reasons in support of its motion. The first reason was that Texaco had violated the PMPA by failing to renew the statutorily defined one-year interim franchise. The district court was correct in denying the motion for that reason. One of the preconditions for non-renewing a franchise is as follows:

(E) In the case of any franchise entered into prior to June 19, 1978, and in the case of any franchise entered into or renewed on or after such date (the term of which is 3 years or longer, or with respect to which the the franchisee was offered a term of 3 years or longer), *a determination made by the franchisor in good faith and in the normal course of business to withdraw from the marketing of motor fuel through retail out-*lets *in the relevant geographic market area in which the marketing premises are located, if—*

(1) *such determination—*

(I) *was made after the date such franchise was entered into or renewed, and*

(II) *was based upon the occurrence of changes in relevant facts and circumstances after such date*

. . . .

15 U.S.C. § 2802(b)(2)(E)(i)(I) & (II) (emphasis added).

■ Section 2802(b)(2)(E)(i) does not apply, however, when a franchisor makes a determination not to renew an interim franchise. *See id.* § 2803(b)(3)(D)(iii) & 2803(c). Since the basis for Consumers' argument was that Texaco's decision to withdraw was based on the occurrence of relevant facts after the interim agreement was entered, allowing an amendment on that basis would have been futile.

Consumers, however, advanced a second reason before the district court in support of its motion. The argument was not that the nonrenewal of the interim franchise violated the PMPA; rather, it was that the interim franchise was invalid so as not to constitute a separate franchise relationship under the PMPA. Consumers asserts that the invalidity of the interim franchise renders the five-year agreement and the one-year agreement as one ongoing and continuous franchise relationship.

Under section 2803(b)(3)(C), an interim franchise becomes effective only if the nonrenewal of the prior franchise was based upon a determination described in section 2802(b)(2)(E) above. An interim franchise, therefore, only becomes effective if the decision to withdraw from the market under the prior franchise was made in good faith and in the normal course of business and based upon changes in relevant facts and circumstances after the date the prior franchise commenced. Consumers argues that

year agreement. We cannot, therefore, construe the complaint as also raising a claim un-

der the one-year agreement.

there is a triable issue as to whether the decision not to renew the five-year agreement was made in accordance with the above requirements. The problem with the district court's treatment of this argument is that the district court gave no reasons for rejecting it. The district court merely stated that it would take additional time to consider "[p]laintiff's arguments that 2803(b) and (c) invalidated the interim franchise into which the party entered." The district court never, however, discussed the merits of this argument before denying Consumers' motion.

We find this to be an abuse of discretion under *Foman*. Unless the reason was apparent, the district court must justify its denial of the motion. 371 U.S. at 182, 83 S.Ct. at 230. Simply responding to one of the arguments is not sufficient justification. Since the district court addressed the merits of the motion, we can not assume that the apparent reasons were undue delay or prejudice. It is also not apparent that allowing an amendment on the second argument advanced would have been futile. We can not conclude from reviewing the record that Consumers could not have developed facts to support its assertion that Texaco's decision not to renew the five-year agreement was made in accordance with the requirements of section 2802(b)(2)(E) to create an interim franchise. Our discussion in Part I that a prior franchise and an interim franchise form two separate franchise relationships only applies if the interim franchise is valid. Without a valid interim franchise, any transactions occurring between the franchisor and franchisee following expiration of the prior agreement are part of the same relationship. If Consumers can prove that the interim franchise was invalid, the statute of limitations would not have begun to run on the PMPA claim until the one-year agreement expired on August 30, 1982. For those reasons, an amendment would not have been futile. The district court's

denial of Consumers' motion for leave to amend is, therefore, reversed.[2]

### III.

Finally, Consumers contends that the district court erred in holding that its state law claims of misrepresentation and fraud were pre-empted by the PMPA. Consumers argued before the trial court that Fisher knew when he responded to Feldman's question regarding Texaco's possible withdrawal from the Michigan market that Texaco had already decided and prepared clandestinely to withdraw. Such a knowing misrepresentation, it argues, deprived Consumers of other distributorship opportunities. Fisher allegedly made this misrepresentation in July 1977, almost four years before the five-year agreement was scheduled to expire. The district court construed the effect of the claims as requiring Texaco to give a two to three year notice of its intention not to renew the five-year franchise agreement in contravention of the notice provisions of the PMPA. *See* 15 U.S.C. § 2804(b)(2)(A) (notice required not less than 180 days prior to termination or nonrenewal).

A federal statute regulating a specific area may preempt, in two ways, any state law purporting to regulate that same area. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984) (citing *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983)). *See also Kelly v. Carr*, 691 F.2d 800, 804 n. 9 (6th Cir.1980). Any state regulation or law regulating or impacting in a field that Congress intended to be superceded by the federal regulation is preempted. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). In those areas which Congress has not completely regulated, state law is still

---

**2.** There is one other consideration for the district court on remand. At the time Consumers requested leave to amend, the one-year limitations period had expired to bring a claim under the one-year agreement. The district court should determine whether the new claims relate back to the original complaint pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

pre-empted if it conflicts with federal law, *id.,* or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

Unlike many federal regulations where congressional intent must be implied, Congress has expressed its intent as to the reach of the pre-emption doctrine in the PMPA. Section 2806(a) of the PMPA provides:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a).

The PMPA does not preempt every state law that relates remotely to the termination or nonrenewal of petroleum franchises; but it does preempt any state law with respect to "grounds for, procedures for, and notification requirements" with respect to terminations and nonrenewals. *Bellmore v. Mobil Oil Corp.,* 783 F.2d 300, 304 (2d Cir.1986). Section 2806(a) also expressly preempts any state law providing remedies or penalties for any violations of the notice provisions of the Act. Congress provided that the purpose underlying the Act was to create a "uniform set of rules governing the *grounds* for termination and non-renewal of motor fuel marketing franchises and the *notice* which franchisors *must* provide franchisees" prior to termination or nonrenewal. S.Rep. No. 731, 95th Cong., 2d Sess. 15, *reprinted in* 1978

U.S.Code Cong. & Ad.News 873, 877. Uniformity would thus be compromised if a claim under state law which substantially impacts or varies the nonrenewal or notice provisions of the PMPA is actionable.

■ On its face, a claim for misrepresentation or fraud does not appear to relate to the nonrenewal or notice requirements of the Act. In our view, however, the claim as it arises in this case has the direct effect of seeking to impose a longer notice requirement upon Texaco than that required under the PMPA. No matter how the claim is characterized, Consumers is really contending that Fisher should have given it notice in response to its inquiry that Texaco planned to withdraw from the Michigan market and planned not to renew the five-year franchise agreement three years in the future. This is not a situation where the impact of state law has a tangential or speculative effect on the 180 day notice requirement. If we were to hold that the state law claims could proceed, the impact of the misrepresentation or fraud claims would produce a result in complete variance with what the notice provision of the Act requires. A franchisee is presumed to be aware of the notice requirements at the time it signs a franchise agreement. Congress has, therefore, placed a responsibility on the franchisee to be prepared for notice of an impending termination or nonrenewal that could come as late as 180 days before the agreement expires. Even assuming Consumers' version of the Fisher-Feldman meeting to be true, Congress did not intend for franchisors to be compelled to reveal any contemplated or completed plans for termination or nonrenewal prior to the notification limits mandated under the PMPA. Furthermore, even if the claims were somehow actionable, they would be governed exclusively by the PMPA, which provides remedies for disputes relating to the termination or nonrenewal of franchises.

Other courts addressing the preemption issue with respect to the PMPA lend support to our conclusion. In *Huth v. B.P. Oil, Inc.,* 555 F.Supp. 191 (D.Md.1983), the franchisor brought a state law claim for

fraud and breach of contract relating to the termination of its franchise. The defendant argued that the claim was no more than a suit for wrongful termination governed by the PMPA. The district court held that the state law claims were preempted because Maryland's three-year statute of limitations applicable to the state claims was inconsistent with the one-year limitations period in the PMPA.

Consumers relies on a recent Second Circuit decision to support its position, but that case does not detract from our conclusion. In *Bellmore v. Mobil Oil Corp.*, 783 F.2d at 306, the court held that a Connecticut statute dealing with the compensation to be paid by a franchisor to the franchisee for the goodwill of the franchise upon termination or nonrenewal was not preempted by the Act. The state regulation provided that the franchisor was required to compensate a franchisee for the goodwill of the franchise if the franchisor failed to give one-year notice of nonrenewal of the franchise. The court determined that the payment of goodwill was merely a means to provide compensation upon termination or nonrenewal, which is not prohibited by the PMPA. Although the state statute used a one-year notice requirement to invoke the goodwill provision, the court held that the "one-year good will provision is much too tenuous, speculative, and uncertain" to frustrate the purposes of the notice requirements of the Act.

■ Contrary to the Connecticut goodwill statute, Consumers' state law claims have the effect of frustrating the purpose of the notice requirements imposed by Congress. We conclude, therefore, that Consumers' pendent state law claims are preempted by the PMPA. Because of our holding, we need not consider the district court's alternative ruling that Consumers' state law claims were not actionable under the state law of Michigan.

The district court's summary judgment is, therefore, AFFIRMED and the order denying Consumers' motion to amend is REVERSED and REMANDED for proceedings consistent with this opinion.

CONTIE, Senior Circuit Judge, concurring in part and dissenting in part.

I disagree with the majority's interpretation of the term "franchise relationship," as defined in 15 U.S.C. § 2801(2), and its consequential effect on determining when the statute of limitations will begin to run in any particular case. In my view, the statutory language and legislative history relied on by the majority more strongly support Consumers' argument that the term "franchise relationship" is intentionally and sufficiently broad to encompass the situation before us. Although the express provisions of the "interim franchise" agreement and the five-year franchise agreement differ, I cannot accept the majority's reasoning that the existence of different terms in these franchise agreements, combined with the nature of interim franchises, dictates the conclusion that two "franchise relationships" had been created. First, it is clear that Congress intended the term "franchise relationship" to encompass a series of franchise agreements which may contain differing terms. The majority acknowledges this point. Second, my reading of the legislative history and statutory language convinces me that simply because parties enter into a new franchise agreement which is not subject to all the PMPA requirements does not result in the creation of a new, separate franchise relationship. Rather, when the same parties and subject matter are involved, and there has been no significant lapse of time between the agreements, I would conclude that there is only one relationship involved. I believe this interpretation is also more consistent with the philosophy that a statute of limitations should be interpreted in the light of the statute's purposes and "with due regard to those practical ends which are to be served by any limitation of the time within which an action must be brought." *Reading Co. v. Koons,* 271 U.S. 58, 62, 46 S.Ct. 405, 406, 70 L.Ed. 835 (1926).

I would conclude, therefore, that the district court erred in holding that this action was barred by the statute of limitations, and would remand this case for further proceedings. This disposition would make

it unnecessary for this court to review the district court's denial of Consumers' motion to amend its complaint.[1]

Further, while I concur in Part III of the majority's opinion, I write separately to express my belief that by finding Consumers' state law claims to be preempted, we are in no way holding that the PMPA preempts all common law tort claims, or even all misrepresentation claims. Whereas the misrepresentation claim in this case has the *effect* of changing the notification requirements, such may not always be the case, even when a misrepresentation claim is raised in conjunction with challenging the termination of a franchise agreement. I agree with the majority that the PMPA does preempt the state law claims in the instant case since recognizing the claims would present a conflict with the PMPA requirements.

---

1. I further believe that the majority's resolution of the motion to amend issue in Part II of its opinion is inconsistent with its statute of limitations analysis and lends support to my argument. Under the majority's analysis in Part II, the district court will necessarily have to reach the merits of Consumers' complaint in order to determine whether its claim is barred by the statute of limitations, even though the majority had previously concluded that the district court was correct in not reaching the merits of Consumers' claim since it was timebarred. Consumers has argued from the start that Texaco's nonrenewal of the prior franchise was not in accordance with statutory requirements. Since that is the nature of its claim, it is, I believe, more logical to allow this claim to go forward under a legitimate interpretation of the statute of limitations rather than to permit the district court to reach the merits of the claim in order to determine whether the claim is time-barred.