**Harold J. BELLMORE, et al., Plaintiffs,**

v.

**MOBIL OIL CORPORATION, Defendant.**

**Civ. No. B–81–172.**

United States District Court,
D. Connecticut.

June 15, 1981.

Richard W. Farrell of Abate, Fox & Farrell, Stamford, Conn., for plaintiff.

William E. Glynn and Scott P. Moser of Day, Berry & Howard, Hartford, Conn., for defendant.

## RULING ON PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

DALY, District Judge.

This case is now before the Court on plaintiff Bellmore's application for a preliminary injunction.[1] A temporary restraining order currently in effect maintains the status quo as it was on May 31, 1981, when Mr. Bellmore's franchise agreement with Mobil was due to expire, but bars either party from construing on-going relations between them as a renewal or creation of a franchise agreement. Plaintiff claims that Mobil's decision not to renew the contract was not the result of "determinations made by [Mobil] in good faith and in the normal course of business", a permissible rationale under the Petroleum Marketing Practices Act (PMPA), but rather is the result of Mobil's insistence upon new contract terms "for the purpose of preventing the renewal of the franchise relationship", a goal prohibited by the statute. 15 U.S.C. § 2802(b)(3)(A). The Court makes the following findings of fact and conclusions of law.

The plaintiff, Harold J. Bellmore, is an independent service station dealer who operates a two bay station in Hamden, Connecticut. He has been a Mobil franchisee for about twenty-five years, and aside from disagreeing with Mobil about hours of operation, has maintained a cordial business relationship with the company. Mobil is a major refiner of petroleum products, and is engaged in the sale, through franchised dealers, of its products under the name "Mobil". Defendant thus is a franchisor as defined by the PMPA. 15 U.S.C. § 2801(3). Plaintiff argues that defendant has violated provisions of the PMPA in three respects.

### I. Mobil's Notice of Intention Not to Renew

Plaintiff's last written franchise agreement with Mobil was for the period June 1, 1978 through May 31, 1981. The agreement required Mobil to give notice one-hundred and eighty days before terminating or not renewing the franchise, whereas ninety days notice is required by the PMPA. 15 U.S.C. § 2804(a)(2). Mobil's letter of November 24, 1980 (Ex. 4), sent at least one-hundred eighty days before the

---

1. There are five plaintiffs in this lawsuit, but only plaintiff Bellmore has sought a temporary restraining order and a preliminary injunction thus far. The franchise agreements of three other plaintiffs are due to expire later this year, and a fourth plaintiff has, since the filing of the complaint, agreed to a new contract with Mobil.

anticipated nonrenewal on May 31, 1981,[2] was timely notice under both the contract and the statute. The letter gave "final and irrevocable" notice of Mobil's intention, and specifically stated that any subsequent negotiations between the parties would not waive the effectiveness of notice given. The clarity of that language is not clouded by the arguably contradictory conduct of later negotiations between Mr. Bellmore and Mobil. Plaintiff suggests that the letter's reference to negotiations prior to November 24, 1980 between him and Mobil vitiates the effectiveness of the letter, because no such negotiations had occurred. However, testimony at the hearing was contradictory as to when plaintiff actually received his franchise renewal package, and when he commenced discussions with Mobil about proposed changes in the franchise agreement.[3] Even assuming that plaintiff had not discussed with nor received from Mobil any of its proposals before November 24, the letter's import is clear. Therefore, the Court finds that Mobil complied with its obligations under both the franchise agreement and the PMPA.[4]

## II. The Statutory Grounds for Nonrenewal of Franchise

In this preliminary injunction application plaintiff must show that "the franchise relationship of which he is a party has not been renewed", and that "there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation." 15 U.S.C. § 2805(b)(2)(A).[5] In addition, the Court must evaluate the balance of hardships before issuing an injunction. § 2805(b)(2)(B). In this case, there is no dispute that Mobil failed to renew its franchise relationship with Mr. Bellmore. However, the existence of a serious question on the merits, such as would warrant injunctive relief from this Court, is in dispute. For an injunction to issue, the evidence must reveal some question about Mobil's good faith. Defendant urges the Court to inquire only into its subjective intent, whereas plaintiff contends that the Court is to determine if the proposed lease terms are reasonable, according to an objective standard. The Court concludes that a limited inquiry into subjective intent is mandated by the statute, and that there appears no serious question that Mobil acted in bad faith or for the purpose of driving Mr. Bellmore from business.

The most exhaustive study of Congress's intent in enacting the PMPA was undertaken by Judge Blumenfeld in *Munno v. Amoco Oil Company*, 488 F.Supp. 1114 (D.Conn.1980). Legislative history reveals that Congress was concerned with franchise agreements that amounted to contracts of adhesion unilaterally imposed on reluctant dealers by an all-powerful distributor. However, Congress chose not to provide the maximum level of protection possible to dealers, but balanced the interests of fran-

---

2. Plaintiff Bellmore testified that he did not recall when he received the letter, but it may be assumed that it was received shortly after November 24, 1980 on the present record.

3. Plaintiff Bellmore testified on direct examination that he first discussed changes in the franchise agreement with his marketing representative in December, 1980, and that he received the franchise renewal package in January, 1981. On cross-examination he stated that he probably received the package before November 24. In light of this factual uncertainty, the Court is unable to draw the inference plaintiff suggests is warranted, that the stated reason for nonrenewal is a sham.

4. Proof that Mobil had given notice of nonrenewal before negotiating with plaintiff could lead to an inference that it was not negotiating in good faith, as the court noted in *Ferriola v.*

*Gulf Oil Corp.*, 496 F.Supp. 158, 161 (E.D.Pa. 1980).

5. 15 U.S.C. § 2805(c) prescribes that "the franchisee shall have the burden of proving the termination of the franchise or nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted" under relevant sections of the statute. This language does not assign to a franchisor the burden of proving, but rather the burden of producing evidence of, an affirmative defense. The Court is then to look to the evidence as a whole to determine if there is a serious question going to the merits to warrant injunctive relief.

chisees and petroleum companies so as not to draw courts into extensive review of all franchise contracts. The prescribed role for courts is

> to look to the franchisor's intent rather than to the effect of its action. If it is only using proposed changes to the lease to disguise an illegal attempt to discriminate against the franchisee and thereby drive him from business, the court is empowered to interfere. If, on the other hand, a good faith application of a rental formula operates unreasonably in a particular case, the dictates of the marketplace alone will govern the transaction. This interpretation is completely in accord with the perceived abuse which Congress sought to rectify.

*Munno v. Amoco, supra* at 1119. Other courts are in agreement that the essence of improper conduct in franchise negotiations is selective application of a standard practice, or discrimination against an individual dealer. *Ferriola v. Gulf Oil*, 496 F.Supp. 158 (E.D.Pa.1980); *Pearman v. Texaco, Inc.*, 480 F.Supp. 767 (W.D.Mo.1979); *Kesselman v. Gulf Oil*, 479 F.Supp. 800 (E.D.Pa.1979). A franchisor has been found to have acted improperly when it has proposed a 250% rent increase so as to drive its franchisee from business, thus freeing the leased property for conversion to another use, *Daniels v. Dilmar Oil Co.*, 502 F.Supp. 178 (D.S.C. 1980), or when it has applied a rental formula in a discriminatory fashion against a particular dealer by failing to take into account relevant factors and by giving undue weight in its calculations to the fact that the franchisee was also a jobber, *Sexe v. Husky Oil Co.*, 475 F.Supp. 135 (D.Mont.

1979). However, in none of these cases did the court enjoin a franchisor from terminating a franchise relationship simply because the new contract terms appeared unreasonable. This Court is in agreement with the weight of authority that Congress did not intend it to substitute its own judgment of what is reasonable for that arrived at through the operation of market forces.[6]

■ In light of its limited role in reviewing the proposed changes to the franchise agreement, the Court finds evidence of Mobil's bad faith insufficient to warrant injunctive relief. Mr. Bellmore's new contract rent was determined by use of a formula which is applied to franchisees throughout the country.[7] The formula calls for Mobil to evaluate certain historical data, projected sales volumes and comparative sales figures, among other information.[8] Because these factors are not determined simply from objective evidence, but instead call for some independent judgments, the formula is not as blind to individual characteristics of a franchisee as is one based upon accounting records of yearly rents and actual expenses. *Cf. Munno v. Amoco, supra* at 1117, (there was "no question that [Amoco's formula was] being applied uniformly nor [was] it possible, because of the nature of the formula, to use it to discriminate in favor of or against any given franchisee in figuring his rent.") However, the record in the instant case does not permit the conclusion that Mobil abused its discretion in developing data for its calculations such that it did not act in good faith. Admittedly, Mobil did not examine plaintiff's books to find out what the true profit margin had been, but used a mix of other criteria to

---

**6.** The court in *Pearman v. Texaco*, 480 F.Supp. 767, 772 (W.D.Mo.1979) stated that it did "not believe that the Petroleum Marketing Practices Act was intended to authorize this Court to substitute its judgment as to what factors should or should not be considered in determining rental rates. Where rental charges are made in good faith, in the normal course of business and not for the purpose of preventing the renewal of the franchise relationship, the mere fact that the parties or the Court would have made a different business judgment or base that judgment on different factors is immaterial."

**7.** Although the complaint alleges that certain other proposals to the new franchise agreement were also offered by Mobil in violation of the PMPA, the gist of plaintiff's claim is, and the evidence at the hearing related to, the rent increase.

**8.** *See* Plaintiff's Proposed Findings of Fact 28–31, and Defendant's Proposed Findings of Fact 9–13.

estimate the margin. Nor did Mobil consult plaintiff's records for the volume sold, but substituted a projection of what could be sold. There is no evidence that Mobil's estimates as to Mr. Bellmore were reached in a manner different than for other franchisees. Therefore, the fact that the formula does not predict the precise volumes nor profits of Mr. Bellmore's business is not necessarily indicative of any intent on Mobil's part to employ its formula in a discriminatory manner.[9]

It may fairly be assumed that Mr. Bellmore is correct when he states that he is unable to pay the proposed rent increases and still run a profitable service station. His net profit last year was about $16,000, and the proposed increase of $6,024 for the first year,[10] from $7,008 to $13,032, would certainly eat up much of any anticipated profit. Presumably, Mobil is not blind to the effect its lease changes would have on Mr. Bellmore, but it appears that Mobil's goal in suggesting those changes is to increase its own profits,[11] and the termination of Mr. Bellmore's franchise is an effect of its striving towards that goal, rather than a goal itself. Since Congress has directed the courts to inquire into a franchisor's intent, rather than into the effects of its actions,[12] this Court should not intercede at present.

Having concluded that there is no serious question, on the present record, of bad faith, or intent to drive plaintiff out of business, the Court need not proceed to the second step, of balancing the hardships, in the preliminary injunction process.

### III. Mobil's Philosophy on Franchisee Rent

Mobil's Service Station Rental Philosophy (Ex. 9) calls for a franchisee rental policy that is "fair and justifiable to the dealer organization." Assuming that the quoted language imposes a standard of commercial reasonableness, as plaintiff suggests it does, and further assuming that Mobil's proposals for increases in plaintiff's rent are not reasonable, this Court has no jurisdiction to hear claims that an internal standard has been varied in this case. Plaintiff's cause of action lies under the federal statute, not under a policy statement, and only because it arises under the PMPA does this Court have jurisdiction. An examination of Mobil's actions in light of corporate policy is irrelevant to the statutory cause of action, except that a variation from policy may be circumstantial evidence of bad faith. The fact that most franchisees have accepted rents calculated according to Mobil's formula [13] suggests that the rental policy is perceived as "fair and justifiable" to the dealers. Of course, plaintiff is not precluded from proving at trial that Mobil dealers perceive otherwise.

\*  \*  \*  \*  \*  \*

For the foregoing reasons, plaintiff's application for a preliminary injunction is denied.

It is SO ORDERED.

---

9. A comparison with other dealers may aid the Court in its decision. *See Pearman v. Texaco, supra* at 771. In this case, there is no evidence that the disparity between plaintiff's actual sales and profits, and Mobil's estimates as to those facts is greater than such a disparity in any other franchisee's case.

10. Rent in the second and third years under the lease would increase to $13,764 and $14,526, unless Mobil exercises the rental reopener clause, in which case it would increase to $16,-512 and $19,802 in those years.

11. *See* Testimony of William Nappo.

12. Of course, subjective intent is most commonly determined from circumstantial objective evidence, and, therefore, predictable effects of certain conduct may shed light on the actor's intent.

13. *See* Testimony of William Nappo.