Louis A. SERIANNI

v.

**GULF OIL CORPORATION.**

Civ. A. No. 84–2945.

United States District Court,
E.D. Pennsylvania.

May 21, 1986.

---

Mitchell A. Kramer, Richard M. Abrams, Philadelphia, Pa., for plaintiff.

Robert A. Nailling, Gulf Oil Corp., Houston, Tex., Carole Dotson Green, Norristown, Pa., Keith E. Parks, Gulf Oil Corp., Houston, Tex., for Gulf Oil Corp.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiff Louis Serianni owns and operates a gasoline service station in Oreland, Pennsylvania. He brings this suit against defendant Gulf Oil Corporation (Gulf), alleging that defendant's decision not to renew its contract with plaintiff was improper under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2805 (1985).

Defendant has moved for summary judgment, and plaintiff has responded. Oral argument was held on the motion, and further submissions requested. These submissions having been made, the motion is now ripe for disposition.

### Factual Background

The parties have submitted a joint pretrial memorandum, in which the following facts are described as undisputed. Plaintiff and defendant first entered into a contract about April 3, 1972, in which defendant agreed to deliver Gulf petroleum products. This agreement was periodically renewed without modification of the terms, and remained in effect until May 3, 1983. On March 4, 1983, defendant's manager of retail sales, Daniel Macedo, forwarded a letter to plaintiff notifying him that his contract would not be renewed automatically for another term. The letter stated in part:

Gulf's retail marketing strategy calls for outlets which present a distinctive image of service to the motoring public and have the capability as well as a proven record of achievement in producing a high volume of gasoline sales year in and

year out.... A review of your record with Gulf indicates that your operation cannot meet the requirements of Gulf's program for the mid–1980's and beyond. What may have been a fruitful relationship years ago has become severely strained by the realities of recent times. Should you desire to terminate your relationship with Gulf now or at any time prior to the expiration of your contract term, a mutual cancellation form is enclosed for your review and signature.

Plaintiff did not sign the mutual cancellation form enclosed with the letter. Instead, after agreeing to extend the existing contract for one month (until May 3, 1983), defendant proposed a new contract which included a requirement that plaintiff purchase 20,000 gallons of gasoline from defendant each month.

This provision, known as a "minimum volume requirement," would require plaintiff to sell roughly three times as much gasoline per month as he had been selling. Plaintiff's monthly sales declined steadily during the 1980's: In 1980, plaintiff averaged 10,609 gallons per month; in 1981, he averaged 7,835 gallons per month; in 1982, he averaged 6,671; over the first four months of 1983, he averaged 6,000 gallons per month.

To arrive at the minimum gallon requirement of 20,000 gallons, defendant's sales representative in charge of plaintiff's station, Arnold Sampson, evaluated another service station in plaintiff's area which he deemed similar to plaintiff's. This station, located in Wyndmoor, Pennsylvania, had more gasoline pumps and islands than did plaintiffs.

Plaintiff agreed in June, 1983, to accept the new contract. In the ensuing months, however, plaintiff was unable to meet the minimum gallon requirement. His average monthly purchases from May 1, 1983 to January 1, 1984, were 6,003 gallons per month, and he did not purchase the minimum amount in any single month. On January 11, 1984, defendant sent a letter to plaintiff advising him that he had not met the requirement. Plaintiff continued to do business as usual, not changing his pricing structure, hours of operation, advertising policies, or the physical appearance of the station. From January through March, 1984, plaintiff's average monthly purchases were 5,334 gallons per month.

On March 21, 1984, defendant sent plaintiff a letter informing him of defendant's decision to terminate the agreement. The letter stated, in part, that "all of your [Serianni's] agreements with Gulf ... will be nonrenewed effective at midnight on July 2, 1984, because you have failed to purchase the minimum volumes of fuel required by your agreements...." On June 18, 1984, plaintiff filed this lawsuit.

In addition to its relationship with plaintiff, defendant also maintains contractual relations with two other service stations in plaintiff's area. One is the station at Wyndmoor, which defendant used as a basis for calculating plaintiff's minimum volume requirement. Although Gulf charges the owner of the Wyndmoor station the same price for gasoline as it charges plaintiff, it has given Wyndmoor, from May 1983 until the present time, a $.02 per gallon special allowance rebate. The other Gulf station in plaintiff's area is located in North Hills, Pennsylvania. This station also pays the same price for gasoline as does defendant. Like Wyndmoor, however, it has also received a $.02 per gallon rebate since May, 1983. Although eligible for volume rebates, plaintiff did not receive a rebate from defendant after May, 1983.

Plaintiff prices his gasoline at 22 or 23 cents per gallon over the price charged by defendant. The North Hills station, which does a significantly higher volume of business than does plaintiff, charges at its self-service pumps a price that is within $.01 to $.02 per gallon of defendant's pre-rebate price. Prices at the self-service pumps at North Hills are thus within a cent or two of the price plaintiff pays defendant.

*The Petroleum Marketing Practices Act*

In *Sun Refining and Marketing Co. v. Rago,* 741 F.2d 670 (1984), the Third Circuit summarized Congress's purpose in enacting the PMPA:

In enacting the PMPA, Congress recognized "the legitimate needs of a fran-

chisor to be able to terminate a franchise ... based upon certain actions of the franchisee, including certain failures to comply with contractual obligations...." S.Rep. No. 731, 95th Cong., 2d Sess. 19, U.S.Code Cong. & Admin.News 1978, p. 877. The major thrust of the PMPA, however, is to protect franchisees from arbitrary or unfair termination by limiting the franchisor's ability to resort to such an "extreme remedy." *Id.* at 17. Numerous commentators have noted that judicial interpretation of the PMPA must take into account the Act's primary goal of protecting franchisees.

*Id.* at 673 (footnote omitted). To effect this purpose, Congress provided as a general rule that no petroleum franchisor shall fail to renew any franchise relationship, 15 U.S.C. § 2802(a), and then enumerated several exceptions to this rule, § 2802(b). Of these exceptions, one is relevant to this case. That is § 2802(b)(2)(A), which reads in pertinent part:[1]

(2) For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship....

As stated earlier in this Memorandum, defendant stated in its letter of March 21, 1984, that plaintiff's contract would not be renewed because plaintiff "failed to purchase the minimum volumes of fuel required by your agreements...." *See* Complaint, Ex.A. Thus defendant notified plaintiff of nonrenewal on grounds listed in § 2802(b)(2)(A).[2]

The PMPA restricts the definition of the term "failure" in this section as follows:

The term "failure" does not include—...

(B) any failure for a cause beyond the reasonable control of the franchisee.

15 U.S.C. § 2801(13)(B) (1985). Plaintiff's argument under the PMPA therefore is that his failure to meet the minimum volume provision of the contract was beyond his reasonable control, and therefore not a "failure" as defined by the PMPA. In the alternative, plaintiff argues that the minimum volume requirement provision was not a "reasonable" contractual provision as required to establish legitimate grounds for nonrenewal under § 2802(b)(2)(A).

### *Defendant's Motion for Summary Judgment*

The crux of defendant's motion is that the 20,000 gallon per month requirement

---

**1.** Not included in this excerpt are references to the provisions of the Act specifying the procedures a franchisor is to follow in notifying the franchisee of nonrenewal. Plaintiff has alleged that defendant did not give plaintiff proper notice under the Act. Complaint, ¶ 15(c). Defendant states in its motion for summary judgment that notice was given according to the requirements of the Act, 15 U.S.C. § 2804, which requires that notice be in writing and that the franchisee be notified 90 days prior to termination or nonrenewal. The notice letter, which plaintiff attached to its complaint, was dated March 21, 1984, and stated that nonrenewal would be effective on July 2, 1984, more than 90 days later. Plaintiff has not challenged defendant's argument on this issue. Accordingly, I conclude that defendant gave plaintiff proper notice under § 2804.

**2.** In its motion for summary judgment and supporting memoranda, defendant refers only to § 2802(b)(2)(A) as its grounds for nonrenewal. In the joint pretrial memorandum, however, defendant lists as one of the legal issues in this case "whether plaintiff failed to exert good faith efforts to carry out the provisions of the franchise, 15 U.S.C. § 2802(b)(2)(B)." Section 2802(b)(2)(B) makes available as grounds for nonrenewal:

A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise if—

(1) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and

(ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

Defendant did not refer to plaintiff's failure to make good faith efforts in its nonrenewal letter of March 21, 1984, however, and defendant has not presented any other evidence to establish that notice was given to plaintiff under the terms of this section. Summary judgment shall therefore not be entered for defendant on the basis of § 2802(b)(2)(B).

was a reasonable one, and that its decision not to renew plaintiff's contract was therefore justifiable. In support of its argument, defendant notes that it afforded plaintiff an opportunity to review the proposed contract with counsel, and that plaintiff agreed to the contract. Defendant also argues that its decision to impose a 20,000 gallon minimum was not an ad hoc decision, but was based on an evaluation of plaintiff's station and a comparison of it with another station in plaintiff's area.

Plaintiff responds that the requirement was unreasonable for several reasons. Plaintiff notes that while the other two Gulf stations in his area received volume rebates, plaintiff did not. In a supplemental submission, plaintiff cites the testimony of one of defendant's marketing representatives, James H. Hughes, that defendant would not consider offering rebates to a station which sold less than 50,000 gallons per month (Hughes dep. at 38–39). In addition, plaintiff notes that the station with which Gulf compared his station in arriving at the 20,000 gallon minimum was a larger station than his own, and thus inappropriate as a basis of comparison (Joint Pretrial Memo at 3). Instead, a review of plaintiff's volume of sales shows that since 1981, plaintiff has averaged less than 8,000 gallons per month (*id.*). If this figure is used as a basis, plaintiff argues, a figure of 20,000 gallons per month is clearly unreasonable. Finally, plaintiff argues that he informed defendant of his view that he could not meet the requirement, but that defendant responded that he had to agree to it to obtain a renewal of his contract (Plaintiff's memorandum at 11; Serianni dep. at 29; Macedo dep. at 38).

Summary judgment is appropriate only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether a genuine issue of fact exists, a court must draw all reasonable inferences in the affidavits in favor of the non-moving party. *Rago*, 741 F.2d at 673. And in a case arising under the PMPA, the facts should be evaluated in light of the "major thrust of the PMPA, [which is] to protect franchisees from arbitrary or unfair termination...." *Id.*

■ In this case, defendant has not established that there is no genuine issue as to any material fact. Plaintiff has supported the allegations in his complaint that the minimum volume requirement was unreasonable, and that his failure to comply with it was beyond his reasonable control, with deposition testimony from which the following inferences might be drawn: (1) that defendant's decision to use a larger station than plaintiff's as the basis for setting a minimum volume requirement of 20,-000 gallons per month was inappropriate (Joint Pretrial Memo at 3; Sampson dep.); (2) that defendant would not have offered special allowance rebates to plaintiff even had plaintiff sought them, though it offered them to his competitors (Hughes dep. at 38–39); (3) that plaintiff told defendant he did not think he could meet the 20,000 gallon requirement, but that defendant stated that without that requirement defendant would not renew the contract (*Compare* Serianni dep. at 29 *and* Macedo dep. at 38 *with* Sampson dep. at 29). A reasonable factfinder might conclude, on the basis of this testimony and these inferences, that plaintiff's failure to meet the minimum volume requirement was beyond his reasonable control, or that the requirement itself was an unreasonable one.

None of these inferences is inescapable, of course, and a reasonable factfinder might not draw any one of them. At this stage, however, plaintiff need not win his case, but only demonstrate that he has a case to put before a factfinder. This much plaintiff has done, and so defendant's motion for summary judgment on plaintiff's federal claim must be denied.

Defendant has also moved for judgment on plaintiff's state law claim, that defendant violated defendant's duty of fair dealing under Pennsylvania common law and under Pennsylvania's Gasoline Act, 73 Pa. Stat.Ann. § 202–1 *et seq.* (Purdons 1985). Section 202—3(d)(2), on which plaintiff relies, states:

In determining whether or not an agreement shall be terminated, cancelled, or not renewed[,] the failure or refusal of the lessee dealer to do any of the following shall not be grounds for such action:

. . .

(2) Failure by the lessee dealer to meet sales quotas suggested by the lessor supplier.

Defendant argues that § 2806 of the PMPA preempts Pennsylvania law. Section 2806 reads in pertinent part:

[N]o state or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

15 U.S.C. § 2806(a) (1985).

 Plaintiff argues in response that in several cases, courts have held that the PMPA did not preempt certain state laws and regulations. For example, plaintiff cites *L.C. Williams Oil Co. v. Exxon Corp.*, ¶ 8406 CCH Bus.Fran.Guide 15,506 (M.D.N.C.1985), in which the court held that certain state law provisions were not preempted by the PMPA. In that case, however, as in the other cases cited by the plaintiff, the court also found that the statutory provision and the conduct at issue did not relate directly to the issue of termination and nonrenewal of a franchise agreement. In this case, however, it is clear that both the statutory provision cited by plaintiff and the conduct complained of relate directly to the issue of nonrenewal. Therefore, judgment on plaintiff's state law claim will be entered in favor of defendant.

An appropriate Order is attached.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART:

(1) defendant's motion for summary judgment is GRANTED as to plaintiff's state law claims;

(2) defendant's motion for summary judgment is DENIED as to plaintiff's claim under the Petroleum Marketing Practices Act.