**MOBIL OIL CORPORATION**

v.

**Theadeous S. KARBOWSKI d/b/a Ted's Mobil Service Station.**

**Civ. No. H–86–1316 (AHN).**

United States District Court,
D. Connecticut.

Sept. 4, 1987.

---

Scott Moser, Day, Berry & Howard, Hartford, Conn., for plaintiff.

Richard W. Farrell, Farrell & Barr, Stamford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

NEVAS, District Judge.

This is an action for injunctive, declaratory, and monetary relief brought by Mobil Oil Corporation ("Mobil") a franchisor against Theadeous S. Karbowski a franchisee of a Mobil gasoline service station located in Branford, Connecticut. Mobil seeks to enforce its purportedly proper termination of the parties' petroleum marketing franchise relationship. This action arises under the Petroleum Marketing Practices Act, 15 U.S.C. Sections 2801–2806 ("PMPA"), and the court has jurisdiction under 28 U.S.C. Sections 1331, 1332, 1337, 2201, and 2202. The defendant Karbowski has filed a counterclaim seeking, *inter alia,* to enjoin the termination of the franchise relationship on the basis of Mobil's alleged violations of the PMPA and the Connecticut Gasoline Dealers Act, Conn. Gen.Stat. Sections 42–133j through 42–133n, which regulates various aspects of petroleum product franchises. Jurisdiction

to entertain this compulsory counterclaim is under Rule 13(a), Fed.R.Civ.P.

By verified complaint, Mobil asserts two causes of action. In the first cause of action, Mobil seeks a declaratory judgment that its franchise relationship with Karbowski has been properly terminated in accordance with the PMPA and injunctive relief requiring Karbowski to vacate the Mobil service station. Mobil maintains that it is entitled to terminate the franchise on two independent grounds: (1) Karbowski's failure to comply with reasonable and materially significant provisions in the franchise agreement pursuant to PMPA Section 2802(b)(2)(A), Verified Complaint paras. 13–15; and (2) Karbowski's failure to make good faith efforts to comply with provisions of the franchise agreement, pursuant to PMPA Section 2802(b)(2)(B), *id.* paras. 13–14, 19. The two franchise provisions in issue require Karbowski to operate the gas station 24 hours a day, seven days a week, and to purchase a minimum gallonage of gasoline each month. Mobil's second cause of action, which is not at issue now, is a state law claim alleging Karbowski's breach of the franchise contract and lease.[1]

Presently before the court is the defendant Karbowski's motion for summary judgment on Mobil's first cause of action brought under the PMPA. Karbowski asserts that the Connecticut Gasoline Dealers Act prohibits Mobil from terminating the franchise relationship and, therefore, he is entitled to judgment in his favor. This motion squarely places before the court the legal issue of whether the PMPA preempts portions of the Connecticut Gasoline Dealers Act prohibiting a franchisor from terminating or not renewing a petroleum franchise relationship due to the franchisee's conduct. One part of the Connecticut Act prohibits termination or nonrenewal because of a franchisee's failure to meet sales quotas suggested by the franchisor. Section 42–133*l*(a) and (e)(2), Conn.Gen.

---

1. Mobil has sought leave to amend its complaint to more clearly allege the alternative grounds for termination and to add a cause of action for common law fraud based on the defendant's alleged conduct in entering into the franchise with the intention not to comply with franchise

provisions. *See* Mobil's Proposed First Amended Verified Complaint accompanying Motion for Leave to Amend (filing no. 24). The defendant has opposed the motion. This ruling does not address Mobil's motion for leave to amend its complaint.

Stat. The second part prohibits a franchisor from terminating or not renewing a franchise because of a franchisee's refusal to operate the station beyond hours he documents to be unprofitable to him or beyond the hours of 6:00 a.m. and 10:00 p.m. Section 42–133*l*(a) and (e)(4), Conn. Gen.Stat.

## Procedural History

Mobil filed its complaint with supporting papers for injunctive relief on October 1, 1986. The court then issued an Order to Show Cause directing the defendant to show cause on October 14, 1986, why Mobil's motion for preliminary injunction should not issue (Filing no. 5, filed October 2, 1986). In response, the defendant Karbowski filed a counterclaim and moved for temporary and preliminary injunctive relief. (Filing nos. 9–12, filed October 7, 1986). The court entered an order pursuant to PMPA Section 2805(b), temporarily enjoining Mobil from terminating Karbowski's franchise and maintaining the status quo pending a final hearing on October 15, 1986, the purpose of which was to resolve the merits of Karbowski's and Mobil's cross-motions for a preliminary injunction. Temporary Restraining Order filed October 8, 1986 (filing no. 13).

At a status conference on October 14, 1986, the court, with the agreement and input of counsel, fashioned an order which outlined a discovery schedule and set a jury trial date for December. Expedited Trial Scheduling Order filed October 16, 1986 (filing no. 16). By order dated October 17 and entered absent the parties' objection, the terms and conditions of the Temporary Restraining Order were ordered to remain in effect pending a decision of this action by summary judgment or trial. Order (filing no. 17). In November, the parties jointly sought, and the court granted, a modification of the Expedited Trial Scheduling Order by suspending the discovery and trial pending briefing, arguing, and a resolution of the summary judgment motion. Motion to Modify Schedule (filing no. 21). By the parties' agreement, the terms and conditions of the Restraining Order were to remain in effect. *Id.*

The defendant Karbowski filed his motion for summary judgment on December 11, 1986. He supports the motion with Defendant's Memorandum of Law in Support of: (1) Summary Judgment; (2) Injunctive Relief Pursuant to 15 U.S.C. Section 2805(b) ("Defendant's Memorandum," filing no. 34); Appendix to Defendant's Motion for Summary Judgment ("Defendant's Appendix"); and Defendant's Statement of Material Facts as to which Karbowski Claims there is No Genuine Issue to be Tried ("Defendant's Fact Statement," filing no. 35). Mobil opposes the motion with Mobil's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Mobil's Memorandum," filing no. 31); Exhibits to Mobil's Memorandum ("Mobil's Exhibits," filing no. 32); Mobil's Statement of Material Facts as to which there Exists a Genuine Issue to be Tried ("Mobil's Fact Statement," filing no. 26); Mobil's Proposed Findings of Fact and Conclusions of Law (filing no. 27). Karbowski replied to Mobil's submissions with Defendant's Reply Brief, Supplemental Statement of Facts (filing no. 38).

The court heard oral argument on December 15, 1986. Hearing Transcript (filing no. 40, filed April 29, 1987). Since the argument, the parties submitted further briefs on the preemption issue. *See* Defendant's Supplemental Memorandum of Law in Support of Motion for Summary Judgment Regarding Supreme Court Decision *CTS Corp. v. Dynamics Corp. of America* (filing no. 41); Mobil's Memorandum of Law in Opposition to Defendant's Supplemental Memorandum of Law Regarding *CTS Corp. v. Dynamics Corp. of America* (filing no. 43); Mobil's Supplemental Statement in Opposition to Defendant's Supplemental Memorandum of Law Regarding *CTS Corp. v. Dynamics Corp. of America* (filing no. 44).

## Facts

A comparison of the Defendant's Fact Statement with Mobil's Fact Statement and Proposed Findings of Fact reveals that the parties agree on those facts material to

deciding whether the PMPA preempts section 42–133*l*(a) and (e)(2) and (4) of the Connecticut Gasoline Dealers Act with respect to the two grounds for termination asserted by Mobil. The relevant facts are as follows.

Theadeous S. Karbowski has been a Mobil franchisee since March 7, 1976, operating a Mobil station named "Ted's Mobil Service Station" located at 48 Leetes Island Road, Branford, Connecticut. Karbowski's Affidavit, Defendant's Appendix Exhibit A. On March 29, 1985, Mobil and Karbowski executed a Service Station Lease ("Lease") and Retail Dealer Contract ("Contract") concerning the operation of the service station for the period from April 1, 1985, through March 31, 1988. Lease and Contract, Defendant's Appendix Exhibit D. Those documents create a petroleum franchise relationship between Mobil and Karbowski within the meaning of the PMPA and the Connecticut Gasoline Dealers Act. PMPA Section 2801(2); Section 42–133k(b), Conn.Gen.Stat.

Paragraph 5 of the Lease provides, in part, that Karbowski will operate the station 24 hours per day, seven days a week.[2] Paragraph 1 of the Contract provides that Mobil is to sell, and Karbowski is to buy, as much gasoline each month as Karbowski orders, up to a maximum of 62,500 gallons. This paragraph further provides a "minimum gallonage" amount that requires Karbowski to purchase no less than 50% of the 62,500 gallonage maximum Mobil is to supply. The Lease at paragraph 18 and the Contract at paragraph 20 provide that the terms and conditions within the documents are "reasonable and of material significance to the relationship of the parties."

On June 26, 1986, a year after the Lease and Contract became effective, Mobil notified Karbowski by letter that the Lease, Contract, and franchise relationship would be terminated on September 30, 1986, in accordance with the PMPA because of Karbowski's failure to comply with the hours of operation provision and the minimum

gallonage provision. Mobil Letter to Karbowski, Defendant's Appendix Exhibit C. Mobil explained to Karbowski that he had consistently failed to operate the station on a 24 hour, seven day a week, basis, despite Mobil's repeated requests to keep the station open. The termination letter also explained that Karbowski had failed to purchase the minimum quantities of gasoline in eleven of the last fourteen months despite the fact that Mobil had provided notice of the failure and an opportunity to cure. Mobil's letter further stated that Karbowski's failure to comply with the two provisions in the Contract and Lease, which provisions were both reasonable and of material significance to the franchise, and his failure to exert good faith efforts in carrying out the two provisions provided grounds for termination of the franchise relationship under the PMPA. *Id.* at 2.

### Petroleum Marketing Practices Act

The Petroleum Marketing Practices Act represents Congress' determination in 1978 to establish comprehensive, uniform legislation regulating the area of termination and nonrenewal of petroleum marketing franchise relationships. A reading of the abundant legislative history of the PMPA reveals that the PMPA was enacted for a variety of purposes. First, and foremost, the PMPA was enacted to establish "protection for franchisees from arbitrary or discriminatory termination or non-renewal of their franchises." S.Rep. No. 95–731, 95th Cong., 2d Sess. 15, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 874 ("Senate Report"). The legislative history shows Congress' recognition of, and attempt to remedy, the vast disparity in the bargaining position between the often powerful franchisor-refiner and the lone franchisee-dealer. *Id.* at 878; *Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 304 (2d Cir. 1986) ("[t]he gist of it is that Congress was much concerned with the coercive relation-

---

**2.** The defendant Karbowski stipulates for purposes of this motion that he initialed and thereby assented to the continuous operation provision in the Lease. Defendant's Memorandum at 2.

ship between the franchisor and franchisee...."); *Brach v. Amoco Oil Co.*, 677 F.2d 1213, 1216 (7th Cir.1982)[3]; *Munno v. Amoco Oil Co.*, 488 F.Supp. 1114, 1118 (D.Conn.1980) (Blumenfeld, J.) ("franchise relationship frequently amounted to a contract of adhesion unilaterally imposed on reluctant dealers by an all-powerful distributor").

PMPA's legislative history also discloses Congress' concern with retaining a degree of flexibility for franchisors and not unduly interfering with their legitimate business decisions. Congress expressly recognized "the legitimate needs of a franchisor to be able to terminate ... or not renew a franchise relationship based upon certain actions of the franchisee, including certain failures to comply with the contractual obligations or upon certain changes in circumstances ..." and to provide "flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences." Senate Report at 877. *See Russo v. Texaco, Inc.*, 808 F.2d 221, 225 (2d Cir.1986); *Bellmore*, 783 F.2d at 304 n. 2.

An additional purpose for the passage of PMPA may be gleaned from its legislative history. Congress sought to establish uniform guidelines regarding franchise relationships throughout the United States. *See* Senate Report at 877.[4]

In the PMPA, Congress struck a balance in the franchise relationship by prohibiting a franchisor from terminating or not renewing any petroleum franchise relationship unless based on specifically delineated grounds and in accordance with the notification requirements. Senate Report at 891; PMPA Sections 2802(a), 2802(b)(1).[5] Consequently, a franchisor like Mobil may, after giving proper notice,[6] terminate its franchise only where "such termination is based upon a ground described in paragraph (2)" of section 2802(b)(2). That section sets forth grounds, which are lettered

---

3. In *Brach v. Amoco Oil Co.,* the court stated: Congress designed the PMPA to allay three specific concerns: that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable expectations of the parties that the franchise relationship will be a continuing one.

4. The Senate Report provides:

   In recent years the friction between franchisors and franchisees in marketing of motor fuels has become so great that it has threatened adverse impacts upon the Nation's motor fuel distribution and marketing system. Numerous States have initiated various legislative actions to address these petroleum product franchising problems. These actions have, unfortunately, resulted in an uneven patchwork of rules governing franchise relationships which differ from State to State.

   Needed is a single, uniform set of rules governing the grounds for termination and nonrenewal of motor fuel marketing franchises and the notice which franchisors must provide franchisees prior to termination of a franchise or nonrenewal of a franchise relationship. Such a set of rules would clearly define the rights and obligations of the parties to the franchise relationship in the crucial area of termination of a franchise or nonrenewal of the franchise relationship.

5. 15 U.S.C. Section 2802(a), which is a general prohibition against termination or nonrenewal of franchises, provides:

   Except as provided in subsection (b) of this section and section 2803 of this title, no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may— .

   (1) terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise; or

   (2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed). Section 2802(b)(1) provides:

   Any franchisor may terminate any franchise (entered into or renewed on or after June 19, 1978) or may fail to renew any franchise relationship, if—

   (A) the notification requirements of section 2804 of this title are met; and

   (B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3).

6. PMPA's notice provision is section 2804. For purposes of this motion, the defendant Karbowski does not dispute that Mobil satisfied the notice requirements of the PMPA. *See* Hearing Transcript at 39.

A through E, upon which termination and nonrenewal is permissible.[7]

Mobil asserts that its termination is proper under the first two grounds. Section 2802(b)(2)(A) provides:

For purposes of this subsection, the following are grounds for termination of a franchise or nonrenewal of a franchise relationship:

(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure—

(i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or

(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

Section 2802(b)(2)(B), which provides a second ground for termination or nonrenewal, states:

A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise, if—

(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and

(ii) such failure thereafter continued within the period which began not more than 180 days before the date notification of termination or nonrenewal was given pursuant to section 2804 of this title.

The defendant does not take issue with Mobil's compliance with the notice and time limitations within subsections (A) or (B).

---

**7.** Since this is a termination case under the PMPA, the statutory analysis in this opinion will not cover grounds for nonrenewal set forth in subparts (2) and (3) of section 2802(b)(2). This opinion will also not discuss a third ground for termination or nonrenewal that is based on the occurrence of an event which is relevant to the franchise relationship and as a result of which

*Preemption—PMPA*

Simply put, the preemption doctrine provides that if federal law and state law conflict, then the federal law is supreme notwithstanding contrary state law. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause); *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Bellmore,* 783 F.2d at 303; *Housatonic Cable Vision v. Department of Public Utility,* 622 F.Supp. 798, 805–06 (D.Conn.1985) (Blumenfeld, J.).

Federal legislation regulating a particular area may preempt state law seeking to regulate in the same area in two ways. *Silkwood,* 464 U.S. at 248, 104 S.Ct. at 621 (citing *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n,* 461 U.S. 190, 203–04, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983). First, Congress can expressly or impliedly through the structure and purpose of the federal law prohibit or supersede state law or regulations in an area. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977); *Housatonic Cable Vision,* 622 F.Supp. at 805–06. Second, in those areas which Congress has not completely regulated, federal law preempts state law that conflicts with it. *Fidelity Federal Savings & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Jones v. Rath Packing Co.,* 430 U.S. at 525–26, 97 S.Ct. at 1309–10. A state law conflicts with a federal law for preemption purposes where

"compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217–18, 10 L.Ed.2d 248 (1963), or "where state law stands as an obstacle to

---

termination or nonrenewal is reasonable within the meaning of the PMPA. *See* PMPA Sections 2802(b)(2)(C) (ground); Section 2802(c) (noninclusive list of "events").

For a general review of the PMPA statutory scheme, *see Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1216 (7th Cir.1982).

the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

*Bellmore*, 783 F.2d at 304.

The Second Circuit's opinion in *Bellmore* offers district courts in this circuit specific guidance in evaluating PMPA's preemptive effect on state law.[8] To determine the preemptive effect, the *Bellmore* court wrote that it "must examine the statutory language and legislative history of the PMPA, 'the subject matter of the regulated field and the interest in uniformity, ... the pervasiveness of the federal statutory scheme ... [and the] impediments that state regulation might pose to federal objectives.'" *Id.* at 304, *quoting County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 57 (2d Cir.1984). After reviewing the PMPA's legislative history, the court of appeals declined Mobil's invitation to broadly construe the PMPA as preempting any issue relating to the termination or nonrenewal of petroleum franchises. The Second Circuit then wrote:

> The PMPA neither expressly nor impliedly preempts all state law relating to any aspect of the termination or non-renewal of petroleum franchises. Rather, it preempts only state statutes as to grounds for, procedures for, and notification requirements with respect to termination or non-renewal.[9]

Congressional intent with respect to the preemptive limits of the PMPA finds expression in the words of the PMPA. The relevant preemption section is section 2806(a), which provides:

> To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation (including any remedy or penalty applicable to any violation thereof) with respect to termination (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship unless such provision of such law or regulation is the same as the applicable provision of this subchapter.

Congress, by its word choice in section 2806(a), carefully delineated the PMPA's preemptive limits to the grounds for termination or nonrenewal of franchises and the manner in which the termination or nonrenewal is done. *Bellmore*, 783 F.2d at 305; *Lasko v. Consumers Petroleum of Connecticut, Inc.*, 547 F.Supp. 211, 216 (D.Conn.1981). The PMPA "does not preempt all state laws regulating petrole-

---

8. In *Bellmore*, the Second Circuit held that a section in the Connecticut Gasoline Dealers Act dealing with compensation to be paid by a franchisor to the franchisee for the good will upon termination or nonrenewal was not preempted by the PMPA. The Connecticut statute at issue, section 42–1331(b), Conn.Gen. Stat., requires the franchisor to compensate a franchisee for the good will of the franchise if the franchisor fails to give one-year notice of nonrenewal of the franchise. The court of appeals decided that the payment of good will was simply a means to provide compensation upon termination or nonrenewal, and is not prohibited by the PMPA. Although the state statute used a one-year notice requirement to trigger the good will provision, the court held that the "one-year 'good will' provision is much too tenuous, speculative, and uncertain" to frustrate the purposes of the PMPA notice requirements. *Bellmore*, 783 F.2d at 306.

9. The Second Circuit in *Bellmore* completed this quoted passage with a citation to *Lasko v. Consumers Petroleum of Connecticut, Inc.*, 547 F.Supp. 211, 216 (D.Conn.1981). In *Lasko*, Chief Judge Daly held that the PMPA did not preempt section 42–1331(c), Conn.Gen.Stat., which sets minimum terms for gasoline franchises. In reaching his decision, Judge Daly wrote that "it is clear that the sections of the Connecticut statute which establish permissible bases for termination and nonrenewal and the kind of notice required (*See* Conn.Gen.Stat. Section 42–133*l* (a), (d) and (e)) were preempted" by PMPA's preemption section.

Subsections (a) and (e) of section 42–133*l*, which regulate the grounds for termination or nonremoval, are at issue here.

um franchises; rather it merely supplants those provisions which are different from the PMPA." *Ted's Tire Service, Inc. v. Chevron, USA, Inc.*, 470 F.Supp. 163, 165 (D.Conn.1979) (Clarie, J.)

### Connecticut Gasoline Dealers Act

In October 1977, less than a year before the enactment of the PMPA, the Connecticut legislature passed the Connecticut Gasoline Dealers Act, Conn.Gen.Stat. Sections 42–133j through 42–133n, which regulates various aspects of the relationship between petroleum product franchisors and franchisees in Connecticut. Like Congress, the Connecticut legislature determined that petroleum franchises needed regulation. The reasons for the passage of the Gasoline Dealers Act are codified in section 42–133j(a).[10]

Mobil contends that portions of section 42–133*l* are preempted by the PMPA under the circumstance of this case. Section 42–133*l* (a), which regulates the termination aspect of a franchise relationship, states:

No franchisor shall ... terminate, cancel or fail to renew a franchise, except for good cause shown which shall include, but not be limited to the franchisee's refusal or failure to comply substantially with any material and reasonable obligation of the franchise agreement except such obligations under subsection (e) of this section....

Subsection (e), in relevant part, provides:

No franchisor shall terminate, cancel or fail to renew a franchise for the fail-

ure or refusal of the franchisee to do any of the following: ... (2) failure to meet sales quotas suggested by the franchisor; ... (4) refusal to keep the premises open and operating during those hours which are documented by the franchisee to be unprofitable to the franchisee or to preclude franchisee from establishing his own hours of operation beyond the hour of 10:00 p.m. and prior to 6:00 a.m.; ....

Subsection (e) further provides that subdivisions (2) and (4), as well as the other three subdivisions not relevant here, "shall not be deemed material and reasonable obligations, substantial failure to comply with franchise terms, or good cause under subsection (a) of this section."

A plain reading of subsections (a) and (e) of section 42–133*l* demonstrates that a franchisor may terminate a franchise relationship under Connecticut law by showing that a franchisee refused or failed to comply with any material and reasonable obligation in the franchise agreement. This "grounds for" termination under Connecticut law is similar to the PMPA section 2802(b)(2)(A), which also permits a franchisor to terminate a franchise because of the franchisee's failure to comply with a franchise provision which is reasonable and of material significance to the franchise relationship.[11] Up to this point, the federal law and state law do not conflict.

Section 42–133*l* (e) of the Gasoline Dealers Act proceeds to define what "obli-

---

**10.** Section 42–133j(a), Conn.Gen.Stat, reads:

The legislature of the state of Connecticut finds and declares that the distribution and sales of gasoline and petroleum products through franchises within the state of Connecticut, including the rights and obligations of suppliers and dealers, vitally affects its general economy. In order to promote the public interest and public welfare, to avoid undue control of the dealer by suppliers, to foster and keep alive vigorous and healthy competition for the benefit of the public by prohibiting practices through which fair and honest competition is destroyed or prevented, to promote the public safety, to prevent deterioration of facilities for servicing motor vehicles on the highways of the state, to prevent dealers from unnecessarily going out of business thereby resulting in unemployment with

loss of tax revenue to the state and its resultant undesirable consequences, and to offset evident abuses within the petroleum industry as a result of inequitable economic power, it is necessary to legislate standards pursuant to the exercise of the police power of this state governing the relationship between suppliers and distributors of gasoline and petroleum products and the dealers within the state who sell those products to the public.

**11.** Analysis of the PMPA's preemptive scope with respect to the relevant state law will be demonstrated using PMPA Section 2802(b)(2)(A). The result would be the same using PMPA Section 2802(b)(2)(B) (franchisee's failure to exert good faith effort to comply with franchise provisions).

gation" of the franchise agreement cannot be a ground for termination. These obligations include minimum purchase requirements, *see* subsection (e)(2),[12] and hours of operation, *see* subsection (e)(4). The state law effectively prejudges what is an unreasonable and immaterial provision in a franchise agreement so as to preclude a termination or nonrenewal based on the franchisee's failure to comply with such a provision.

■ To the extent section 42–133*l* (a) and (e) determines what is a *per se* unreasonable and immaterial provision in a franchise agreement barring termination under Connecticut law, this state law is not "the same as," *see* PMPA Section 2806(a), the PMPA. Connecticut law in fact limits the permissible grounds for termination and therefore, in accordance with the PMPA's preemption section which preempts inconsistent state law, it is preempted.

The difference between the PMPA and the Connecticut Gasoline Dealers Act with respect to grounds upon which a franchisor can terminate a franchise relationship may be shown in this case. Mobil has submitted affidavits in support of its contention, which is not in issue now, that the minimum gallonage provision and the continuous hours of operation provision were arrived at by Mobil in good faith and in the normal course of business. *See* Mobil's Memorandum at 30–37; Mobil's Exhibits, Exhibit 1—Dransfield Affidavit paras. 6–16. Assuming Mobil is able to show that it complied with the PMPA's notice requirements, that the franchise provisions are both reasonable and of material significance within the meaning of the PMPA, *see infra* note 14, and that Karbowski has failed to comply with the provisions,[13] then Mobil would be entitled under PMPA Section 2802(b)(2)(A) to terminate its franchise relationship with Karbowski.

However, all things being equal, Mobil would be prohibited from terminating the franchise were the court to apply section 42–133*l* (a) and (e) of the Connecticut Gasoline Dealers Act. Under this state law, Mobil could not terminate the franchise based upon Karbowski's failure to purchase the minimum gallonage requirements and to keep the gasoline station open between the hours of 10:00 p.m. and 6:00 a.m.

These two results are patently inconsistent. Under the PMPA the franchise is terminated, but under Connecticut law, the franchise is not terminated. This inconsistency in the area of "grounds for" termination frustrates one of Congress' express goals in passing the PMPA—uniformity in the petroleum marketing franchise field. *See supra* note 4. Nationwide uniformity would be compromised and frustrated were Karbowski entitled to bar a franchise termination by using Connecticut's inflexible *per se* law prohibiting termination for grounds which, if proved to be reasonable and of material significance, would be permissible under the PMPA. *Cf. Consumers Petroleum Co. v. Texaco Inc.*, 804 F.2d 907, 915 (6th Cir.1986) (preempt state law claim which, if actionable, would substantially impact or vary the nonrenewal or notice provisions of the PMPA).

Other federal courts have upheld a franchise termination or nonrenewal due to the franchisee's failure to comply with a minimum gallonage purchase provision, *Malone v. Crown Central Petroleum Corp.*, 474 F.Supp. 306, 311–12 (D.Md.1979); *Serianni v. Gulf Oil Corp.*, 662 F.Supp. 1020, 1022 (E.D.Pa.1986) (in an action for nonrenewal of a franchise due to franchisee's failure to meet minimum gallonage purchase requirement, the court held a state law which prohibited termination for failure to meet sales quotas was preempted by the PMPA), or an hours of operation provision, *Gruber v. Mobil Oil Corp.*, 570 F.Supp. 1088, 1095

---

12. For purposes of this ruling, subdivision (2) will be construed as covering the minimum gallonage purchase requirement in the franchise Contract.

13. The term "failure" as defined in the PMPA, does not include

(A) any failure which is only technical or unimportant to the franchise relationship; or
(B) any failure for a cause beyond the reasonable control of the franchisee.
15 U.S.C. Section 2801(13).

(E.D.Mich.1983) (18 hour provision, except 12 hours Sunday and holidays); *Amoco Oil Co. v. Beyer,* Bus.Fran.Guide (CCH) para. 8062, at 13,967, 13,974 (N.D.Ill.1983) (24 hour provision); *Crown Central Petroleum Corp. v. Waldman,* 515 F.Supp. 477, 486 (M.D.Pa.1981) (24 hour provision), *aff'd,* 676 F.2d 684 (3d Cir.1982), found to be reasonable and of material significance to the franchise relationship. The propriety of a franchise termination or nonrenewal is examined on the facts of the franchise relationship and in accordance with the PMPA.[14]

Karbowski argues that subsections (a) and (e) of section 42–133*l* of the Connecticut Gasoline Dealers Act are not preempted by the PMPA because they merely define what is unreasonable and not of material significance in a Connecticut petroleum franchise relationship. Defendant's Memorandum at 12, 20. He also argues that the hours of operation provision and the minimum gallonage provision are void as a matter of Connecticut law because the Gasoline Dealers Act prohibits a franchisor from including in a franchise agreement a provision which is an unreasonable burden on the franchisee. Section 42–133*l* (f)(5) and (8), Conn.Gen.Stat.[15] The two franchise provisions at issue, according to Karbowski, are unreasonable within the meaning of the section 42–133*l* (f)(5) and (8) and, therefore, void as a matter of state law. Defendant's Memorandum at 22–24. He further argues that since the two franchise provisions are void under state law, Mobil cannot now assert a claim of waiver or

release by virtue of his signing the franchise Contract and Lease because a franchisee's waiver or release of a right created by the Gasoline Dealers Act is void under section 42–133*l* (f)(1) and (j). Defendant's Memorandum at 24–25.

In view of the previous discussion demonstrating the conflict between the PMPA and Connecticut law in this case, the court is not persuaded by Karbowski's arguments.

Two decisions on the preemptive scope of the PMPA warrant discussion. The first decision deals with the extent of the PMPA's preemption of the Georgia Gasoline Marketing Practices Act, which regulates petroleum franchise relationships in Georgia. *Exxon Corp. v. Georgia Association of Petroleum Retailers,* 484 F.Supp. 1008 (N.D.Ga.1979), *aff'd,* 644 F.2d 1030 (5th Cir.),[16] *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). In *Exxon,* the district court considered a franchisor's declaratory judgment action which claimed that subsections of the Georgia Act were unconstitutional or preempted by the PMPA. Two subsections, Ga.Code Section 106–1104(j) and (k), which made it unlawful for a franchiser to terminate or not renew a franchise on certain grounds, *Exxon,* 484 F.Supp. at 1012 n. 4, and the section which limits a franchisor's defenses in an action for unlawful termination of a franchise, were held preempted by the PMPA and declared invalid under the supremacy clause. *Id.* at 1017–18. The franchisor also challenged a subsection in the Georgia

---

**14.** A determination of reasonableness and materiality of a franchise provision under PMPA Section 2802(b)(2)(A) involves an evaluation of the franchisor's business judgment, giving deference to the franchisor's legitimate business judgments and decisions. *Gruber v. Mobil Oil Corp.,* 570 F.Supp. 1088, 1093–94 (E.D.Mich.1993); *Palmieri v. Mobil Oil Corp.* 529 F.Supp. 506, 510–11 (D.Conn.), *aff'd,* 682 F.2d 295, 296 (2d Cir.1982) (per curiam); *Bellmore v. Mobil Oil Corp.,* 524 F.Supp. 850, 853–54 (D.Conn.), *aff'd mem.,* 672 F.2d 899 (2d Cir.1981); *Munno v. Amoco Oil Co.,* 488 F.Supp. 1114, 1118–21 (D.Conn.1980). *See generally Brach v. Amoco Oil Co.,* 677 F.2d 1213, 1222–23 (7th Cir.1982) (a reasonable franchise provision is one that "has a basis in common sense and experience and is not unconscionable," and a provision is of material significance to the franchise relationship if it is the product of the franchisor's subjective "good faith," and it is made "in a normal course of business").

**15.** Section 42–133*l* (f), in relevant part, provides:
    No franchisor ... shall do any of the following: ... (5) impose unreasonable standards of performance upon a franchisee; ... (8) impose on a franchisee by contract, rule or regulation, whether written or oral, any standard of conduct unless the franchisor ... sustain[s] the burden of proving such to be reasonable and necessary....

**16.** The preemption part of the *Exxon* decision relevant to the inquiry here was not appealed to, and reviewed by, the Fifth Circuit.

Act which forbids a petroleum franchisor from requiring a franchisee to operate for more than six days per week or more than 12 hours per day. *Id.* at 1018; Ga.Code Section 106–1104(i). The franchisor maintained that subsection (i) is preempted because the PMPA allows more flexibility to a franchisor seeking to terminate a franchise.

The *Exxon* court wrote that the franchisor's hypothetical case of its being sued by a franchisee who is terminated because of the franchisee's refusal to accede to the franchisor's demand for a work week longer than permitted by the Georgia statute was an "unlikely possibility" not authorizing it to find a state-federal conflict necessitating federal preemption. The district court stated, however, that "the existence of the PMPA forbids a suit by a Georgia [franchisee] claiming he was terminated because he refused to agree to terms forbidden by the Georgia Act." *Id.*[17]

The second decision, relied upon by both parties, is one recently issued by the First Circuit. *Esso Standard Oil Co. v. Department of Consumer Affairs*, 793 F.2d 431 (1st Cir.1986). In *Esso*, the court considered five oil companies' challenge to a Puerto Rican statute (DOCA regulation) regulating rents petroleum franchisors could charge franchisees. The court of appeals noted that Congress did not intend to preempt all aspects of the franchise relationship, rather only those state laws or regulations governing franchise termination or nonrenewal that are not the same as the PMPA. *Id.* at 434. The *Esso* court, in affirming the district court, held that the Puerto Rican rent control regulation governed a substantive element of the petroleum franchise agreements, and not the area of termination or nonrenewal, and therefore, was not preempted by the PMPA.

The First Circuit in *Esso* did, however, write:

> The preemption provision of the PMPA would clearly invalidate any DOCA regulation that set rental rates for a franchise *and then* did not allow a franchisor to terminate or not renew a franchise if it did not wish to accept that established rate. That is, any law that gave a franchisee a cause of action to contest a termination of a franchise, when that termination would otherwise be valid under the PMPA, would be preempted by the PMPA. In the case before us, however, a franchisor remains free to terminate or not renew a franchise if it does not wish to accept the rent established by DOCA. The Commonwealth's rent control regulation gives neither franchisees nor franchisors rights or responsibilities in the specific area of termination or nonrenewal greater than those granted by the PMPA.

*Id.* (emphasis in original).

*Esso* is consistent with this court's decision that subsections (a) and (e)(2) and (4) of 42–1331 prohibit a franchisor from terminating or failing to renew a franchise on grounds which would be valid under the PMPA. The Connecticut law, unlike the rent control regulation in *Esso*, restrains the franchisor's right, which the PMPA affords, to terminate or not renew a franchise due to the franchisee's failure to comply with a franchise provision which is both reasonable and of material significance to the franchise relationship.

### Conclusion

For the foregoing reasons, the defendant-franchisee Karbowski's motion for summary judgment is denied and subsections (a) and (e)(2) and (4) of Section 42–1331, Conn.Gen.Stat., of the Connecticut Gasoline Dealers Act are preempted and invalid to the extent that they affect Mobil's termination of the petroleum franchise relationship under the PMPA in this action. Unlike the good will statute at issue in *Bellmore*, the sections of the Connecticut Gasoline Dealers Act governing permissi-

---

**17.** Other courts have read the decision in *Exxon* more broadly than this court. *See Esso Standard Oil Co. v. Department of Consumer Affairs*, 793 F.2d 431, 434 (1st Cir.1986) ("Georgia statute forbidding franchisors from requiring a franchisee to operate more than six hours per week or more than 12 hours per day not preempted by the PMPA); *Lasko v. Consumers Petroleum of Connecticut, Inc.*, 547 F.Supp. 211, 217–18 (D.Conn.1981).

938

ble grounds for termination in this case frustrate and conflict with the permissible grounds for franchise termination in the PMPA.

In view of this ruling, and in accordance with the parties' agreement, on or before September 21, 1987, Mobil and Karbowski are to file separate statements setting forth their position on the status of the pending injunction, discovery, pretrial schedules, and trial. A status conference with the court is scheduled for September 23, 1987, at 10:00 a.m. As the parties have agreed, the terms and conditions of the Restraining Order will remain in effect until the court meets with counsel.