17-3511
*Next Communications, Inc., et al. v. Viber Media, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of December, two thousand and eighteen.

Present:
> DENNIS JACOBS,
> ROSEMARY S. POOLER,
> RICHARD C. WESLEY,
> > *Circuit Judges.*

———————————————

NEXT COMMUNICATIONS, INC., NXTGN, INC.,

> *Plaintiffs-Appellants*,

> v.                                             17-3511

VIBER MEDIA, INC.,

> *Defendant-Appellee*.[*]

———————————————

———————————————

[*] The Clerk of the Court is directed to amend the caption as set forth above.

| For Plaintiffs-Appellants: | Annette G. Hasapidis, Hasapidis Law Offices, Ridgefield, CT. |
|---|---|
| For Defendant-Appellee: | JEFFREY P. WEINGART (Susan M. Schlesinger, Sarah A. Pfeiffer, *on the brief*), Meister Seelig & Fein LLP, New York, NY. |

Appeal from the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Plaintiffs Next Communications, Inc. and NxtGn, Inc. (collectively, "Next") are providers of long-distance data services for telecommunication carriers. Defendant Viber Media, Inc. ("Viber") is the maker of a widely used mobile Voice over Internet Protocol application. Next filed a complaint in the United States District Court for the Southern District of New York alleging that Viber misappropriated Next's trade secrets and proprietary information. After limited discovery, Viber moved for summary judgment. The district court, reasoning that Next had failed to state the nature of the allegedly secret technology with sufficient particularity, granted the motion. Next now appeals the district court's judgment as to its claims of misappropriation and breach of contract. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues for review. The standard of review is well known.[1]

---

[1] This Court reviews a "grant of summary judgment *de novo*, because such a motion may be granted only when the moving party shows that there is no genuine dispute as to any material

To succeed on a claim for misappropriation of a trade secret under New York law,[2] a plaintiff "must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990) (citation and quotation marks omitted) (citing cases and Restatement (First) of Torts § 757 cmt. b (1939) (quoted in *Ashland Mgmt. v. Janien*, 82 N.Y.2d 395, 407 (1993))). As the second factor suggests, the defendant must have accessed the trade secret to misuse it. *Id.* A trade secret is "any formula, pattern, device[,] or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland*, 82 N.Y.2d at 407 (quoting Restatement (First) of Torts § 757 cmt. b). New York courts look to the following factors in determining whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

---

fact and it is entitled to judgment as a matter of law." *Jackson v. Fed. Express*, 766 F.3d 189, 193–94 (2d Cir. 2014).

[2] The parties' Non-Disclosure Agreement ("NDA") contains a New York choice-of-law provision, which neither party challenged in the district court.

*Id.* (brackets omitted) (quoting Restatement (First) of Torts § 757 cmt. b).

A trade secret, unlike a patent, does not have to be novel or an invention. *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 968–69 (2d Cir. 1997) (citing Restatement (First) of Torts § 757 cmt. b). Rather, "[a] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design[,] and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Integrated Cash*, 920 F.2d at 174 (quoting *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)). For this reason, computer software programs that contain components that are generally not known by outsiders have received judicial recognition as trade secrets. *See id.* at 173–74.

To show that such a process, design, or operation constitutes a trade secret, a party must describe the trade secret with "specific and concrete information." *Engleman v. David McKay Co.*, 422 N.Y.S. 2d 95, 96 (1st Dep't 1979); *see also Hayman v. AR. Winarick, Inc.*, 325 F.2d 584, 590 (2d Cir. 1963) (rejecting trade secret claim that was "so vague and indefinite as not to be entitled to protection under the law of trade secrets"). In opposition to a motion for summary judgement, this burden requires Next to "set forth specific facts showing that there is a genuine issue for trial" regarding the existence of a trade secret. *King Serv., Inc. v. Gulf Oil Corp.*, 834 F.2d 290, 295 (2d Cir. 1987) (quoting Fed. R. Civ. P. 56(e) (1987)); *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is

4

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). Thus, in the context of a trade secret misappropriation claim, the party opposing summary judgment must be able to identify the alleged trade secret with sufficient specificity to make the moving party aware of what information it has allegedly misappropriated.[3]

Next argues that its "NxtGn HD Video Cloud Architecture and method for monetizing the technology" constitutes a trade secret and/or proprietary information. Appellant Br. 30. But Next did not raise a genuine issue as to (i) the existence of a trade secret or (ii) disclosure of the alleged trade secret to Viber.

First, Next fails to describe its HD Video Cloud Architecture with sufficient particularity to warrant trade secret protection. Next has described its trade secrets differently at each stage of the litigation. In the Amended Complaint, Next referred to NxtGn Proprietary Services, "a unique technique for routing calls" that "provides several avenues to monetize Next and NxtGn's advanced videoconferencing services," and the NextGn App, which "allows . . . millions of people to connect simultaneously to the same video conferencing feed." J.A. 81. During discovery, Next argued that the combination of

---

[3] Although the Second Circuit has not squarely articulated the precise contours of the specificity requirement in the context of trade secrets, we decline to do so now because Next's trade secret claims are so vague and general that there is no question that the alleged trade secrets were not sufficiently described. Moreover, Next does not contest that it bears the burden of identifying a trade secret "with sufficient specificity to allow [Viber] to counter the claim." Appellant Br. 31 (quoting *PaySys Int'l, Inc. v. Atos Se*, No. 14-cv-10105 (KBF), 2016 WL 7116132, at *10 (S.D.N.Y. Dec. 5, 2016) (alteration in original)).

the GSM-IP Mobile Network, the Secure Financial Network, and the HD Video Cloud Architecture constituted a trade secret. And now, on appeal, Next argues that the "NxtGn HD Video Cloud Architecture and method for monetizing the technology" constitute a trade secret. Appelllant Br. 30. This confusion is exacerbated by Next's failure to describe with particularity any of the mechanisms of its HD Video Cloud Architecture. Next merely elaborates on the mystical technology's purported advantages.

Where Next does point to specific evidence, the evidence falls short. For example, Next's expert, Dr. Roger Marks, relies heavily on slides within the PowerPoint presentations NxtGn Video Cloud Platform and NxtGn Video Cloud Platform (2013), and particularly slide NEXT000030, titled NxtGn HD Video Cloud Architecture. However, these slides consist of vague labels, rudimentary graphics, and high-level concepts. The accumulation of icons and arrows fails to convey any information about the logical relationship between the operations, data structures, and software Next alleges combine to form a trade secret. Next employee Vitaliy Yurchenko's declaration is even less specific than Marks's; it fails to provide any information that shows *how* the HD Video Cloud Architecture works as whole. For example, Yurchenko describes the functions of various components, but not how they function as an operating system. Neither declarant explains "the way in which all of the features [are] interrelated," "the know-how by which" the HD Video Cloud Architecture was created, or "the method of making it work." *Imperial Chem.*, 342 F.2d at 740. In short, because Next fails to define the contours

6

of the HD Video Cloud Architecture, a court cannot determine what exactly the HD Video Cloud Architecture encompasses. Consequently, we conclude that Next has failed to identify a protectable trade secret.

Even if Next succeeded in identifying a trade secret with specificity, it fails to show how the protected materials were disclosed to Viber.[4] Next alleges that it voluntarily shared its trade secret with Viber—not, for example, that Viber stole the trade secret without its knowing. This means of disclosure would appear to place Next in the best position to demonstrate how and when its trade secret was conveyed. Internal inquiries, in other words, should have done the job. And yet Next comes up short. For example, in its Opposition to Viber's Motion for Summary Judgment, Next provided a second declaration of its CEO, Arik Maimon. Maimon asserted that on June 30, 2013 he shared the alleged trade secret via email. Inexplicably, Next did not provide the district court with this email.

---

[4] Next argues that the district court's bifurcated discovery plan prevented it from accessing information related to the method of disclosure. However, Next has waived any argument premised on an objection to the district court's discovery plan. Under Federal Rule of Civil Procedure 56(d), "a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit" that justifies its need for additional discovery. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (citing Fed. R. Civ. P. 56(f) (1987)). "[T]he failure to file such an affidavit is fatal to a claim [that a party was precluded from conducting discovery] even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law." *Id.* at 43–44. Therefore, although Next objected on the record to the bifurcation of discovery, and requested that the district court declare a former Viber employee's confidentiality clause void, neither of these actions complied with Rule 56(d)'s requirements for preserving an objection to a discovery plan.

Finally, Next's breach of contract claim fails for the reasons discussed above. To succeed on a breach of contract claim under New York law, a plaintiff must prove: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Next alleges that Viber breached the parties' NDA, under which Viber was authorized to use proprietary information only for purposes directly related to "assessing possible business transactions between the Parties." J.A. 109. Because Next fails to define its alleged proprietary information with sufficient specificity, this Court cannot determine exactly what information was conveyed to Viber and whether that information was used in breach of the terms of the NDA.

We have considered Next's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8